[No. 25977. *En Banc.* July 24, 1936.]

MARGARET J. BROCK, *Appellant,* v. C. A. BUTTON, *Respondent.*[1]

*D. Elwood Caples,* for appellant.

*Bates & Burnett* and *Hall & LaLonde,* for respondent.

[1]Reported in 59 P. (2d) 761.

28

MITCHELL, J.—This is an action by Margaret J. Brock against C. A. Button for damages for breach of a marriage contract. The cause was tried before a jury, which returned a verdict in favor of the plaintiff. The defendant filed a motion for judgment notwithstanding the verdict on several grounds, one of them being:

"That from all the evidence adduced upon the trial of the cause it appears that the agreement of plaintiff and defendant to marry each other was not by its terms to have been performed within one year from the date when said agreement was made, and that said agreement to marry was not in writing as required by the statute of fraud."

The motion was granted and a general order entered, together with a judgment dismissing the action. The plaintiff has appealed.

The only evidence brought up on the appeal is that given by the appellant, which, in substance, is as follows: The parties were well acquainted with each other, and each was the parent of one or more children by a former marriage. Each had procured a divorce, he obtaining his first. Before they were legally eligible to marry, because of the lack of finality of her decree of divorce, he gave her many presents, and much of the time they were together and frequently discussed future marriage. She testified that, "around the first of May, 1931," which was a few weeks after the finality of her decree of divorce, they entered into the agreement to marry that is relied on in this action. At that time, he had several unmarried daughters and a son living with him. The son was about fourteen years of age. At the time they agreed to get married, they discussed, at his suggestion and offer, a change in his will so as to provide her a home and an allowance to live on.

Her version of the agreement was as follows:

"Q. This time in May when you were speaking of the will, I want to know at that time if he said anything about marrying you? A. Yes, he did; he said after the boy went to school,—went away to college, he said his daughters would be married and the boy would go away to college, and then we would be free to get married. Q. And that was in May 1931? A. Yes. Q. And you expected to be married at once? A. No, I didn't. Q. Did you expect to be married in June that year? A. That year? The boy was still in high school. Q. You didn't expect to be married until the boy got out of high school? A. Went away to school. Q. That would be a couple of years, at least? A. It would be at least three years. Q. Did he tell you why he wanted to wait until the boy had gone away to college? A. Well, he remarked every once in a while that we would have the house to ourselves and there wouldn't be anything to do and I could have it easy and not have so much work to do, because it was a big house and I was working all the time keeping it up. Q. You thought that was a good reason for postponing the marriage? A. I don't know what his reasons were, but he said after the boy went away to school. Q. And that was satisfactory to you? A. Yes; there wouldn't be anyone around; not that I cared for that."

There was no writing or memorandum of the agreement. In September, 1934, more than three years after the engagement, the boy went off to college. A few months thereafter, appellant asked respondent when they would get married, and he then told her that he would not marry her. Thereupon, this action was commenced.

The agreement falls within the inhibition of Rem. Rev. Stat., § 5825 [P. C. § 7745], sub. 1, as follows:

"In the following cases specified in this section, any agreement, contract and promise shall be void, unless

such agreement, contract or promise, or some note or memorandum thereof, be in writing, and signed by the party to be charged therewith, or by some person thereunto by him lawfully authorized, that is to say: (1) every agreement that by its terms is not to be performed in one year from the making thereof; . . ."

No specified date was fixed for the marriage, and it clearly appears from her testimony and from the surrounding circumstances discussed and understood by the parties that, by the terms of the agreement, they did not agree or intend that their marriage should take place within one year from the making of the agreement.

After making the contract, the parties, of course, could have married within a year, but had they done so it would have been by virtue of a new or different contract, not the one relied on here. This clause of the statute does not pretend to say what contracts may be made, but that a contract which *"by its terms is not to be performed in one year from the making thereof,"* shall be void unless in writing, etc. The test is *the terms of the contract*. In the present case, the terms of the contract were that the marriage should take place when the boy went off to college, which would be at least three years after the making of the contract. The contract is void. *Tracy v. Barton,* 139 Wash. 440, 247 Pac. 734; *Hendry v. Bird,* 135 Wash. 174, 237 Pac. 317, 240 Pac. 565; *Union Savings & Trust Co. v. Krumm,* 88 Wash. 20, 152 Pac. 681.

There is no occasion to discuss authorities from other jurisdictions, on this point, cited in the briefs. Our statute and decisions are plain.

Appellant further contends that the oral, mutual promises of herself and the respondent to marry

are valid, under clause or provision (3) of Rem. Rev. Stat., § 5825, which requires "every agreement, promise or undertaking made upon consideration of marriage, except mutual promises to marry," to be in writing to be valid. We do not so understand that language. It is plain that this provision covers those kinds of agreements and promises made in consideration of marriage *other than* mutual promises of marriage. That is, in enumerating agreements and promises made in consideration of marriage, which are required to be in writing in order to be valid, the words "except mutual promises to marry" do not mean that the latter kind of agreements are valid if not in writing.

In the Restatement of the Law of Contracts by the American Law Institute, § 178 divides Contracts within the Statute of Frauds into six classes. Class III embraces contracts in which the consideration is marriage or a promise to marry, *except* contracts consisting only of mutual promises by two persons to marry each other. Commenting on this, § 192 of the Restatement says:

"Any promise for which the whole consideration or part of the consideration is either marriage or a promise of marriage is within Class III of § 178, except mutual promises of two persons that are exclusively engagements to marry each other."

That is, this provision in the statute, or this class of contracts, is unrelated to those agreements which are simply mutual promises to marry.

The supreme court of Nebraska, in the case of *Barge v. Haslam,* 63 Neb. 296, 88 N. W. 516, in discussing this subject, said:

"The weight of authority seems in favor of the proposition that mutual promises to marry are within the inhibition of the provision of the statute of frauds,

avoiding contracts which by their terms are not to be performed within a year. *Derby v. Phelps,* 2 N. H. 515; *Nichols v. Weaver,* 7 Kan. 373; *Ullman v. Meyer,* 10 Fed. Rep., 241; Bishop, Contracts [2d ed.], sec. 1275; Browne, Statute of Frauds, sec. 272.''

The rule upon this provision in the statute of frauds, as discussed in 25 R. C. L., Statute of Frauds, p. 448, is expressed as follows:

''The contracts most usually held to fall within the provision requiring contracts in consideration of marriage to be in writing are antenuptial agreements between intended spouses for a settlement on the wife. It included, however, prior to the married women's property acts, agreements that the wife shall enjoy her property as her separate estate free from any claim on the part of the husband by reason of his common law marital rights, such agreements being in the nature of agreements by the husband to settle property upon the wife. This is also true as regards an agreement by an intended spouse in consideration of the marriage to renounce the interest in the estate of the other spouse to which he or she would be entitled as the survivor. As a general rule, mutual promises of marriage are not regarded as within the provision. Some of the statutes expressly exclude from their operation mutual promises of marriage.''

That is precisely what has been done in this state. Rem. Rev. Stat., § 5825, clause (3). They are excepted, that is, excluded, from this clause of the statute.

The judgment dismissing the action was proper. Affirmed.

MAIN, BEALS, BLAKE, GERAGHTY, and STEINERT, JJ., concur.

MILLARD, C. J., TOLMAN, and HOLCOMB, JJ., dissent.