[Civ. No. 13296.   Second Dist., Div. Two.   Nov. 7, 1941.]

HENRY N. SESSIONS, Plaintiff and Appellant, v. SOUTHERN CALIFORNIA EDISON COMPANY (a Corporation), Defendant and Appellant.

612

Robert T. Linney and Hampton Hutton for Plaintiff and Appellant.

Gibson, Dunn & Crutcher and Frederic H. Sturdy for Defendant and Appellant.

HANSON, J. *pro tem.*—This case presents appeals taken by both the plaintiff and defendant from a declaratory judgment, and so we shall refer to the parties here as they were referred to below.

This is a controversy between a former employee and a former employer as to what, if any, pension the former employee is entitled to receive from the former employer. The case is unique in that for several years both parties assumed that the employee was not only entitled to a pension but the pension was paid by the employer in an amount that both parties thought was correctly due. It was not until the employer promulgated a new pension plan that the former employee became dissatisfied and discord arose between them. The case is a reminder of the fable of the dog with a bone in his mouth who, in crossing a stream, suddenly saw his own reflection in the brook beneath and, annoyed at what he thought was a larger bone in the mouth of another dog, snapped for it, dropped his own bone and so lost all. While it is no doubt unfortunate for the plaintiff, it appears that by his suit he has only shown that he is entitled to a lesser amount than he had before.

The appeal of the plaintiff presents a single question, and that is whether the court should have found him entitled to a pension under the defendant's so-called 1938 plan. The appeal of the defendant is from the finding that plaintiff is entitled to a pension of $126.34 per month based on the Retirement Plan of 1934, its contention being that no pension is payable or, in the alternative, that it should only be in the sum of $102.42 per month.

The facts which give rise to this controversy are these: On June 22, 1910, plaintiff entered the employ of defendant

on a month to month basis without duration as to time. In 1919 the defendant company voluntarily promulgated, in writing, a pension plan or system (herein called the 1919 plan) applicable to all of its then or future employees but effective as to any employee only when such employee had attained the age of sixty and had been employed by the company continuously for twenty years prior to the attainment of such age. The plan was signed by the company and its then employees, among them being the plaintiff. It is conceded that while the plan provided it might be canceled at any time without liability to any employee who had not achieved a pension status, it was not an offer of a gratuity by the company to the employees. The plan expressly recited that "said pensions are not to be paid as gratuities but as compensation on account of compliance with the conditions herein set out upon which said pensions are to be paid." The plan contemplated that all pensions should be paid by the company from its own funds, without any financial contribution by the employees by way of deduction of wages or otherwise.

On June 22, 1930, plaintiff had been employed by the company continuously for a period of twenty years. Accordingly on that date he had qualified as to one of the two conditions for a pension under the plan, i. e., twenty years of continuous employment by the company, but he could not then meet the other condition precedent for a pension, and that was age, as he was then only fifty-four. Shortly prior to July 1, 1930, he ascertained that he had a bad heart condition which made him fearful of his ability to serve the company on full time for the next six years so that he might achieve his pension if the company was disposed to continue him in its service. He had no reason to anticipate that it did not or would not desire his service and the record suggests none. He had been an efficient and loyal employee of the company and it in turn fully measured up in its loyalty to him. Because of the dangerous illness which was then upon him, plaintiff sought the good offices of the general manager of his company, under whom he had served for twenty years, to permit him to serve the company on half time at half pay. He was then drawing a salary of approximately $500 per month. As the request was of a character which should have been submitted to the assistant manager, Mr. Lewis, plaintiff was referred to him by the general manager. The facts of

the conversation necessary to be stated are these: The plaintiff told Mr. Lewis that he had a bad heart; that he would be unable to work more than half time; and he proposed that his employment be changed from a full time job on full salary to a half time job on half salary. Mr. Lewis stated that half time workers were not satisfactory and rejected the proposal, but countered by suggesting that plaintiff retire and he would be treated as a special case and be relieved of *all* his duties, and that the arrangement would not jeopardize his right to qualify for a pension. There was no discussion as to the amount of money plaintiff would receive if he retired. Plaintiff accepted the proposal and has not since that date rendered any personal services to the company. Plaintiff testified that his understanding was that "my pension would be given me when I was of age," i. e., had attained sixty years of age.

Beginning with July 1, 1930, until July 1, 1936, the defendant mailed the plaintiff each month a check (charged against its payroll account as a matter of bookkeeping) in the sum of $175, except that beginning with October 1, 1931, when the defendant slashed by nine per cent the compensation of all employees not on pension, he received $159.25 per month until July 1, 1936. Since July 1, 1936, plaintiff has received a monthly pension check in the sum of $126.34. From July 1, 1930, until the date this action was filed in the lower court on April 27, 1939, the plaintiff received a total of $16,124.35 from the defendant company.

Pursuant to a right reserved to it the company in 1934 abolished the 1919 plan except as to employees who prior to July 1, 1934, had fully attained the right to receive pensions or disability benefits under the plan. Thereupon the company promulgated its so-called Retirement Plan of 1934. Unlike the 1919 plan, the 1934 plan provided for a retirement income based on contributions made by an employee and an annuity to be provided by the company. By the plan a pension committee, consisting of five employees selected by the company, was given authority, subject to the approval of the board of directors of the company, to determine conclusively all questions arising in the administration and application of the plan. Only such employees as were employed on a full time basis and who received a stated regular compensation for their services were eligible under the plan. Part time

employees and those receiving a pension, retainer or fee were expressly excluded. Continuous service was defined as meaning continuous employment, with a proviso that the continuity of the term of service should be deemed not broken by absence from service without pay due to illness or disability of the employee which prevented him from following his regular work with the company. "Any absence from service without pay for any reason other than those mentioned occurring previous to the date of this plan shall be considered a break in the continuity of service unless in individual cases, upon recommendation of the Pension Committee, the Board of Directors shall determine otherwise. No absence from service with pay shall be deemed a break in the continuity of service."

A subsequent pension plan, promulgated in 1938, will be outlined, so far as that is necessary, when we come to the discussion of it later in this opinion.

The parties devote the major portion of their briefs to a discussion as to whether the oral agreement is or is not within the statute of frauds, and so we shall first discuss the applicability of the statute. Defendant company contends that the oral agreement alleged to have been made in 1930 between plaintiff and its assistant manager is invalid and unenforceable against it, as its promise made through Lewis, if it be bound thereby, is a promise which falls within that particular category of the statute of frauds which requires a writing where the promise "by its terms is not to be performed within a year from the making thereof." In view of the contention it is important to observe that the only oral contracts of the character here involved which are within the statute are those which cannot be performed within a year of their making. (*Hollywood Motion Picture Equipment Co.* v. *Furer,* 16 Cal. (2d) 184 [105 Pac. (2d) 299]; Williston on Contracts, Rev. Ed., sec. 495; Restat., Contracts, sec. 198.) The basic test for determining whether the oral contract is within or without the statute lies wholly with the *terms* of the oral contract. (*Brock* v. *Button,* 187 Wash. 27 [59 Pac. (2d) 761].) To ascertain the terms of the oral contract in the instant case we would normally turn to the findings and accept them as the measure of the terms except to the extent the findings were not sustained by the evidence. Here, however,

it will suffice to point out that whether we accept defendant's or plaintiff's statement as to the terms of the contract it is obvious that both show the contract to be within the statute. As defendant states its promise, it was to place plaintiff on a retirement or inactive basis until he became sixty (that is, for a period of six years), and *thereafter* to pay him a monthly pension for life. As plaintiff states defendant's promise, it was to pay him a certain sum until he became of pension age (i. e., for six years) and *then* to pay him a pension.

Plaintiff argues that under the contract as he states it, it does not fall within the statute. To sustain his position he relies on the principle that a promise of performance during the life of a specified person is not within the statute, as the death of the person may occur within the year. The difficulty with the plaintiff's position here, and throughout his brief, is that he fails to observe the distinction between performing a contract and being discharged from liability under it. (See Williston on Contracts, Rev. Ed., sec. 496.) Plaintiff leans heavily on *Weatherford Mineral Wells & N. W. Ry. Co.* v. *Wood*, 88 Tex. 191 [30 S. W. 859, 28 L. R. A. 526], which held that a promise to give an annual pass for ten years was not within the statute, as the recipient might die within the year and so the promise might be fulfilled within the year. It is enough to say of that case that it has not been followed outside its jurisdiction and it has been criticised. (2 Williston on Contracts, sec. 496, note 2.)

It is self-evident that the contract in this case was within the statute of frauds. The trial court's fourth conclusion to the contrary was erroneous.

Retirement Plan of 1934: At the time of the oral conversation in 1930 between plaintiff and Mr. Lewis the only pension plan which was outstanding and discussed by the parties was the 1919 plan. That plan had no provision, in terms, permitting part time employment to be calculated as full time or part time as to either its twenty-years' or sixty-years' requirements. There is nothing in the record to indicate that either the plaintiff or Mr. Lewis recalled or knew that the plan was deficient in the particular just mentioned. As plaintiff makes no claim that the defendant could not after July 1, 1930, abrogate the 1919 plan in its entirety, so far as he was concerned, we need not further consider it. It is

enough to say here that the only promise made to plaintiff was that his retirement in 1930 on pay should not jeopardize his right to claim a pension in 1936. There was no agreement that he would receive a special pension if the pension plan of 1919 was not then in effect, nor any promise that he might have a pension under any other plan which might then be in effect.

It is evident from a reading of the Retirement Plan of 1934 that plaintiff not only was ineligible to a pension under that plan but, what is more, he did nothing in an attempt to get under the plan. This may have been due to the fact that he simply assumed the plan covered his case. The 1934 plan did, however, provide that the pension committee, subject to the approval of the board of directors, should have complete authority to determine all questions arising in the application of the plan. In 1935 the pension committee, evidently proceeding on the theory that the plan in terms embraced the plaintiff, caused an official of the company to forward to plaintiff for his signature an application for a pension under the 1934 plan. This application was duly signed by plaintiff and returned to the company. On March 20, 1936, the same official wrote the plaintiff advising him that on July 1, 1936, he would "be transferred to the pension payroll, at the rate of $126.34 per month *in accordance with pension rules and requirements.*" (Italics ours.) Subsequently the pension committee on July 1, 1936, granted a pension of $126.34, proceeding on the assumption that plaintiff had twenty-four years of service to his credit. There was no approval of the act of the committee by the board of directors. However, it seems evident the pension was granted under and pursuant to the 1934 plan, otherwise it would not have been within the authority of the pension committee. That being the case, may the company now contend that the plaintiff did not have a vested right to a pension under the plan?

The pension plan of 1919 was a bonus plan, not merely to encourage performance by the employee of his contract but to induce him to refrain from exercising his right of quitting. While the employee concedes that his employer could have abrogated the plan without substituting another and without liability to him, yet having granted the pension he contends it may not now revoke it. In support of this claim

plaintiff relies upon and states that the instant case "is identical with *Seymour* v. *Oelrichs,* 156 Cal. 782 [106 Pac. 88, 134 Am. St. Rep. 154]," and that *"Grant* v. *Long,* 33 Cal. App. (2d) 725 [92 Pac. (2d) 1940] [is] another nearly identical case." We do not see that the one is identical or the other nearly identical. In fact, neither case is here an authority. In the Seymour case it was held that the statute of frauds could not be set up by way of defense as a bar to an oral contract of employment for ten years, where (1) defendant prior to plaintiff's change had promised to embody the oral agreement in a writing and (2) plaintiff gave up a life position with less compensation in reliance upon the promise. In the Seymour case the employer sought to have the employee effect a change in his situation; in the instant case it was the employee alone who sought such change, along with a waiver of condition in the existing contract with his employer. In the Grant case the court found an implied contract based on a valuable consideration; that the contract had been fully executed on the part of the plaintiff and that for a long period the parties had not only placed their construction on the contract but the defendant had performed in accordance with it, and so could not rely on a defense under the statute of frauds.

Even though the doctrine of equitable estoppel—the basis of the cases just cited—is not here applicable, we are of the opinion that the doctrine of *promissory estoppel* is on the facts applicable and that the case may be solved on that basis. ■ That doctrine is "distinct from the ordinary equitable estoppel, since the representation is promissory, not a misstatement of an existing fact. The promisor misstates no fact; he says, at most, simply, 'I will perform though you do not comply with the condition', or, 'though you subject yourself to a legal defense'. To bring the case within the reason of the rule it is essential that the promisee could and would have performed the condition, or would not have allowed the defense to arise, had it not been for the promisor's waiver." (3 Williston on Contracts, sec. 689.) ■ In the instant case the employer promised to forego the condition of twenty years continuous service immediately prior to the date upon which the employee should attain sixty years of age. There was evidence upon which the trial court could and did find that the employee would not have ceased his employment except

for his reliance upon the promise of his employer, and that despite his illness he could have continued in his employment. We have to accept the facts as found. Accordingly it is clear that on the doctrine of promissory estoppel, despite the statute of frauds, the employer would have been barred from setting up in 1936 that the employee was not then entitled to a pension under the 1919 plan had it been in effect. Even though it was not in effect, and even though plaintiff was not eligible to qualify under the terms of the Retirement Plan of 1934, the pension committee under that plan voluntarily determined he was eligible. By the very terms of the plan such a determination was conclusive except that it was subject to the approval of the board of directors. While no formal approval was given, the evidence warrants a holding that the company by its conduct waived any right which it might have had to object. Viewing, then, the latter plan as largely a continuation of the former plan, it is evident that the doctrine of promissory estoppel may not only be invoked but is here controlling.

Moreover, although the question is close, we think it may fairly be said that the defendant company did not intend by the adoption of the Retirement Plan of 1934, after having held out to its employees for fifteen years the possibility of a pension under the 1919 plan, to eliminate the equitable contingent rights acquired by them or former employees under the 1919 plan. Rather we think it sought by the Retirement Plan of 1934 to amend and supersede the 1919 plan, preserving however, so far as was consonant with the new plan, all contingent rights under the superseded plan. This is indicated by the letter it wrote its employees and former employees wherein it said: "It [the 1919 plan] was more or less inflexible in many respects and imposed upon the company a continually increasing financial burden which eventually would have led to the necessity of abandoning it altogether. To prevent such an unfortunate occurrence, its officers, after a number of months of intensive study with the aid of pension experts, have developed a new pension plan, which has been approved and adopted by the Board of Directors in lieu of the old pension agreement."

The only further question we have to decide is the amount of pension payable under that plan. It is clear that the plaintiff actually retired from active service on July 1,

1930. The trial court's finding to the contrary has no evidence to support it. It is likewise clear that it was not in the contemplation of either Mr. Lewis or the plaintiff that a pension should be computed on more than twenty years continuous service. Both the plaintiff and defendant are here claiming the pension committee erred. On the part of plaintiff the claim is that he had twenty-six years of continuous service; on the part of the defendant the claim is that plaintiff had only twenty years of continuous service; the pension as allowed was based on twenty-four years of service. It is plain on this record that the pension committee sought to pension plaintiff under and in accordance with the plan based on his attained age and number of years of actual, active and continuous service. It inadvertently erred in pensioning him on the basis of twenty-four years of continuous service, as he had only twenty years of such service. On that point no estoppel or waiver is shown. Accordingly the trial court should have declared that plaintiff was entitled to a pension based on twenty years of service and not twenty-four, and found $102.42 as the amount due him monthly instead of $126.34.

We turn now to plaintiff's contention that he should have been awarded by the court below a pension based on the 1938 plan. It appears from the record that on December 30, 1937, the board of directors of the defendant company, by resolution effective as of February 28, 1938, terminated, pursuant to a right reserved therein, the Retirement Plan of 1934 except as to annuities then in force for employees previously retired under that plan. In lieu of this plan, to the extent it was terminated, it provided for pensions in accordance with the terms of a Pension Manual effective March 1, 1938. However, the resolution additionally recited that the company had pensioners who had been retired under the 1934 plan who would have qualified for retirement under the 1919 plan had it been in effect on their retirement, and as to such it provided, in general terms, that if a computation set forth in the resolution, when applied to their case, indicated a greater pension in their favor than they were receiving they should thereafter receive such larger pension and, in a lump sum, the difference between such amount and what had been received from the date of retirement. Nevertheless, the resolution went forward to identify spe-

cifically the names of those thus entitled and their respective pensions computed by the formula. *The plaintiff's name was not in the list.* The resolution further recited that "if any errors or omissions shall be discovered in said list or in the computations as contained therein, the same may, with the approval of this Board, be corrected to conform to the foregoing formula"; and that "the Board of Directors in its discretion shall have the right at any future time and from time to time to rescind or modify the action taken by this Resolution, or any part thereof, or to amend or modify the same in any respect, except as to the pension of any employee who shall have arrived at retirement age prior to such rescission, modification or amendment."

A form letter referring to the resolution and enclosing a copy of the Pension Manual was sent to every employee of the company. Such a letter and manual was sent to plaintiff. Thereafter he made demand on the company for a pension in accord with the computation set up in the resolution, even though he was not on the list of pensioners therein named. The demand was refused. His claim here for such pension is predicated on several theories, but the reasoning presented in support of the various theories seems to us to contain within it its own answer. No rule is suggested, and none can be, which would require the company in the absence of a contract to enlarge the pension payments of all retired pensioners in a class just because it does so for some one or more out of its own treasury. We may not read isolated general portions of the resolution that are helpful to plaintiff's case, but instead we must read it as a whole, and particularly give effect to specific language that bears on plaintiff's claim rather than general language. The purport of the resolution and its limitations are too plain to call for discussion. Incidentally it may be said that it is one thing to be obligated to pay a pension pursuant to a plan under which an employee has retired; it is quite another thing to assume that a company may not subsequently single out such pensioners as it chooses from a class and gratuitously pay them a larger pension from its own corporate funds. Moreover, even those of the class who are singled out have no vested right in that portion of the excess pension paid, as appears from the reservations in the 1938 plan. The finding of the

trial court that plaintiff had no cause of action based on the resolution or the Pension Manual is adequately sustained.

The judgment is reversed with instructions to the trial court to amend its findings, conclusions and judgment to accord with our holding. Appellant Southern California Edison Company to recover costs on appeal.

Wood, Acting P. J., and McComb, J., concurred.