[No. 31706. Department One. November 29, 1951.]

GEORGE B. GRONVOLD, *Appellant*, v. R. S. WHALEY *et al.*, *Respondents.*[1]

[1]Reported in 237 P. (2d) 1026.

*Guttormsen, Scholfield, Willits & Ager,* for appellant.

*Lyle K. Summers, Rummens, Griffin & Short,* and *Paul R. Cressman,* for respondents.

DONWORTH, J.—Plaintiff brought this action for specific performance of an oral joint venture contract entered into in 1935 with defendants R. S. Whaley and H. A. Dent. Plaintiff prayed for a decree directing Whaley and Dent to deliver certain stock to him, or, in the alternative, for a decree imposing a constructive trust on the stock so that his interest would be protected. Defendants' answer, in addition to denials of the principal allegations of the complaint, raised a number of affirmative defenses, the statute of frauds and the statute of limitations being the only ones pertinent to the questions before us.

The action was tried to the court sitting without a jury. At the conclusion of plaintiff's opening statement, defend-

ants orally demurred thereto and moved for dismissal on the grounds that the opening statement affirmatively showed that the cause of action was barred by the statute of limitations and that the contract sued on was void under the statute of frauds. The court overruled the demurrer.

At the close of plaintiff's evidence, defendants interposed a challenge to the sufficiency thereof and again moved for dismissal on the grounds of the statute of frauds and the statute of limitations. The court, in an oral opinion, sustained defendants' challenge to the sufficiency of the evidence and dismissed the action on the ground that the contract sued on was void under that section of the statute of frauds (Rem. Rev. Stat., § 5825 (1) [P.P.C. § 577-3]) pertaining to agreements not to be performed within one year. Plaintiff moved for a new trial. The court denied the motion and entered judgment dismissing plaintiff's action. Plaintiff appeals from the judgment of dismissal.

The facts essential to the disposition of the narrow issues before us are these: Appellant, who was experienced in the business of distributing petroleum products and who had been engaged in transporting such products on Puget sound, became interested in establishing a transportation business on the Columbia river to engage in hauling petroleum products and wheat. He made a survey or compilation of data pertinent to the establishment of such a business and gave it to a friend, Jack Hyneman, who he hoped would go into the business with him. Hyneman showed it to respondent Whaley, who had known and done business with appellant for some time. Whaley was interested in the possibilities shown by the survey and on or about August 5, 1935, met with appellant and Hyneman. Appellant testified that after they had discussed the survey Whaley said: "This looks like a very fine proposition," and then asked: "What is your proposition?" Appellant then testified:

"I told him that what we needed, speaking of Mr. Hyneman and myself—what we needed was financing—finances, and I told Whaley— 'If you would finance the beginning of this operation, we would give you 50 percent of

the stock' and that 'You would have the same proposition as I have always made you; that is, that you will take the first part of the earnings or all of the earnings at the beginning and until you have received your original investment and then we will divide 50/50. That means 50 percent Whaley, 25 percent Hyneman and 25 percent Gronvold.' That was our original agreement. We went further in that we told Whaley that he could hold the stock as security for his putting up the capital until he had received out of earnings an amount equal to what he had invested and then we would split and the stock would be returned to us."

Appellant then testified that Whaley's response to the proposition was: "That sounds good."

The next day, after conferring with his attorney, Whaley again met with appellant and Hyneman. It was then agreed that respondent Dent could come into the venture on Whaley's fifty per cent. Appellant testified that Dent joined the meeting and that Whaley outlined the previously agreed plan to him. According to appellant, Dent then said: "Count me in."

Appellant immediately went to the Columbia river to examine equipment that might be used. Shortly thereafter the Inland Navigation Company was formed by amending the articles of incorporation of the Atlas Oil Company, a corporation controlled by Whaley, and changing its name. The venture was not actually in operation until May, 1937. From then until December, 1938, the operation was limited because Bonneville dam was being constructed and vessels could not go above the dam. Appellant testified that the delay in the commencement of operation was due to the requirement of a certificate of necessity from the Interstate Commerce Commission before they could do business. He further testified that when the agreement with Dent and Whaley was made they did not realize that they would need a certificate of necessity. The certificate when issued was not effective until May 1, 1937. Another cause for delay was that, although the charter of a vessel was first considered, it was finally decided to have one specially built. This boat, named the "Inland Chief," was not launched until January, 1937. It made its first run on the river in May,

1937, but full scale operation did not begin until the completion of Bonneville dam in December, 1938.

The venture was not particularly successful until the outbreak of war in 1941. Although there had been steady growth in the scale of operation and acquisition of properties, the joint venture was in severe financial difficulties at that time. However, from 1941 until the present, it has prospered and is now worth many times the original investment. During the nine-year period ending June 30, 1950, the joint venture made a net profit of $264,258.86. A survey by a firm of marine surveyors, made under the direction of Captain Leppaluoto in March and April, 1947, was admitted in evidence. This showed a total estimated depreciated value of the property listed therein of $3,750,018.

Hyneman left the business in 1940 and subsequently died. No legal representative of his estate is a party to this action. Appellant took active part in the management of the business from its inception until November, 1947, when he was discharged.

In 1936, the Inland Navigation Company formed a second corporation, the River Terminals Company. In 1939, a third corporation, the Columbia-Snake River Towing Company, was formed. This corporation was owned, half by Inland Navigation Company and half by the Upper Columbia River Towing Company, which was controlled by Captain Leppaluoto. In 1941, the three corporations were merged with Leppaluoto's Columbia Marine Shipyards and Upper Columbia River Towing Company, with the result that the original interest of Whaley and Dent in the Inland Navigation Company was thereafter represented by a two-thirds interest in the five respondent corporations. Leppaluoto has owned the remaining one-third interest therein since the merger and has been the manager of the operation of all marine equipment.

Appellant discussed the question of his interests on numerous occasions with Dent and Whaley. While the details of these discussions are not pertinent at this time, it may be said that Whaley and Dent several times acknowledged that

appellant was entitled to some interest in these corporations and made various offers, none of which, however, was in accordance with the terms of the original agreement.

Appellant assigns as error the sustaining of respondents' challenge to the sufficiency of the evidence, the dismissal of appellant's action, and the denial of appellant's motion for a new trial. The primary question posed by all three of appellant's assignments of error is whether the contract sued on falls within the purview of that portion of Rem. Rev. Stat., § 5825, which reads:

"In the following cases specified in this section, any agreement, contract and promise shall be void, unless such agreement, contract or promise, or some note or memorandum thereof, be in writing, and signed by the party to be charged therewith, or by some person thereunto by him lawfully authorized, that is to say: (1) every agreement that by its terms is not to be performed in one year from the making thereof; . . ."

It is appellant's position that Rem. Rev. Stat., § 5825 (1), has application only where the contract, *by its terms*, can *not* be performed within one year. Respondents, on the other hand, contend that the statute applies if, upon looking to the surrounding circumstances and considering the object contemplated by the contract, it can be determined that the parties intended that its performance should extend beyond one year from the making thereof. Both appellant and respondents cite decisions of this court in support of their respective positions.

After a careful analysis of our decisions on this point, we conclude that the correct statement of the rule is as contended by appellant, that a contract does not fall within the provisions of Rem. Rev. Stat., § 5825 (1), unless, by its terms, it cannot be performed within one year from the making thereof.

The following cases support our conclusion: *Hendry v. Bird,* 135 Wash. 174, 237 Pac. 317, 240 Pac. 565; *Tonkoff v. Roche Fruit & Produce Co.,* 137 Wash. 148, 242 Pac. 3; *Dent Lbr. & Shingle Co. v. Cedarhome Lbr. Co.,* 141 Wash. 593, 252 Pac. 141; *Peabody v. Pioneer Sand & Gravel Co.,* 164

Wash. 26, 2 P. (2d) 714; *Von Herberg v. Von Herberg,* 6 Wn. (2d) 100, 106 P. (2d) 737; *Campbell v. Webber,* 29 Wn. (2d) 516, 188 P. (2d) 130.

Respondents, in support of their position, cite *Union Sav. & Trust Co. v. Krumm,* 88 Wash. 20, 152 Pac. 681; *Tracy v. Barton,* 139 Wash. 440, 247 Pac. 734; *Fish Clearing House v. Melchor, Armstrong, Dessau Co.,* 174 Wash. 539, 25 P. (2d) 381; and *Brock v. Button,* 187 Wash. 27, 59 P. (2d) 761.

While there is language in each of these four cases which, at first glance, appears to support respondents' position, our examination of the facts involved indicates that each case represents only a modification of the usual rule which is not applicable to the case at bar. In *Union Sav. & Trust Co. v. Krumm, supra,* the contract called for the construction of a road and the hauling of timber over the road for a period of one year after it had been built. In *Tracy v. Barton, supra,* the contract called for entry onto land and the perfection of homestead thereto. The applicable Federal statute at that time required five years residence and cultivation before a patent could issue. In *Brock v. Button, supra,* the promise was to marry when a son went away to college. The boy at that time was fourteen years old, and it would require three years for him to complete the requirements necessary to enter college. In each of the three cases, we held that the statute applied.

In each of these cases, we examined the surrounding circumstances and the object contemplated by the contract, but only for the purpose of determining *whether the contract by its terms could not be performed within one year.* In each case, performance was by the terms of the contract tied to an event which of necessity would delay the performance of the contract beyond one year from its making. We merely looked to the circumstances to ascertain whether the events required by the terms of the contract could not possibly take place within a year.

*Fish Clearing House v. Melchor, etc. Co., supra,* represents a further refinement of the usual rule. In that case, a broker was to be paid a commission of one cent a pound on

all fish which defendant might thereafter purchase from a certain company. The purchases contemplated by the contract were of the annual salmon pack. The court held the contract to be within the statute, saying:

"We think it is apparent we have a contract that *'by its terms was not to be performed in one year from the making thereof.'* From the surrounding circumstances, it seems clear to us, 'considering the object contemplated by the contract, that the parties intended that it should extend over a year.' Equally clear is it that, under the contingency suggested [the failure of defendant to buy fish from the company], the contract could not be finally terminated within a year. It might be inoperative for a year, by reason of appellant's failure to buy the Nichiro pack. That, however, would not terminate it according to its terms or in the contemplation of the parties. For, after such intervening year when the pack was not purchased, the obligation to pay a commission would still exist, or revive, if the appellant purchased the pack in a subsequent year. The contract is clearly within the inhibition of the statute, and is, therefore, void."

The *rationale* of the decision was that, while the contract might be suspended or abandoned within a year, it could not be *performed* within a year. The requirement is that the contract by its terms must not be performable within a year. The fact that an event may occur within a year that will excuse performance is not sufficient to enable escape from the inhibition of the statute.

The *Fish Clearing House* case, *supra*, recognized a distinction between performance of the contract and discharge of its obligations by other means than performance, a distinction that had not been previously urged on this court.

■■ Thus the rule in this jurisdiction is that a contract does not fall within Rem. Rev. Stat., § 5825(1), unless, by its terms, it cannot be performed within one year from its making. However, the court will examine the surrounding circumstances to ascertain the terms of the contract and to determine whether, by those terms, the contract must of necessity require more than one year to perform. That the contract was not performed within a year, is of no signifi-

cance; nor does it matter that it was highly improbable that the contract could be performed within one year. However, the performance required is actual performance; discharge by other means than performance is not sufficient to prevent the application of the statute. The rule of this jurisdiction is in accord with the weight of authority. Restatement, Contracts, 262, § 198; 2 Corbin on Contracts 534, § 444.

The express terms of the contract in this case were as follows: Appellant and Hyneman were to develop and manage a transportation business on the Columbia river. Whaley and Dent were to finance the business and were to hold the stock until they had been repaid their investment out of the earnings of the business. The contract did not specify any definite amount of money which respondents agreed to furnish. When the amount advanced was so repaid, they were then to deliver half of the stock to appellant and Hyneman.

Respondents argue that the circumstances show that it was impossible to put the enterprise into actual operation until the completion of Bonneville dam, and, since Bonneville dam was not expected to be completed, and was not in fact completed, until three years after the contract was entered into, the contract could not possibly have been performed within one year from its making. The gist of their position is that performance was made conditional upon an uncertain event, to wit, the return of respondents' investments out of the earnings of the joint venture, and this condition could not possibly occur until after completion of the dam.

Although the data in the survey submitted to Whaley was based on conditions as they would exist after the completion of the dam, appellant testified that operation was to commence when temporary locks were completed. The evidence is that the temporary locks were not expected to be opened, nor were they opened, until two years after the making of the contract. However, there is no evidence that the temporary locks could not possibly have been completed within one year. For example, the Army engineers in charge of the construction of the locks might have decided, for

aught that appears in the record, to expedite the completion of the locks so as to be usable within one year. For the doing of a thing to be impossible, it must be physically or legally incapable of being done.

Accepting the premise that, by the terms of the contract as ascertained with reference to the surrounding circumstances, performance could not possibly take place until after the temporary locks were opened, the contract still does not fall within the purview of Rem. Rev. Stat., § 5825 (1).

The rule applicable in such circumstances is stated by Professor Corbin in 2 Corbin on Contracts 541, § 445, as follows:

"A certain performance that would not in itself take a year to complete may be promised at a definite future date more than one year from the time of making the contract. Such a contract is within the statute. But if such a performance is promised at an uncertain time, to be determined by the happening of a condition that may possibly occur within one year, the promise cannot be said to be one that is not to be performed within one year, and it is not within the one-year clause of the statute. It makes no difference how improbable it is that the condition will occur within a year; if there is any possibility that it may so happen, the statutory provision is not applicable. Nor does it make any difference that the condition is one that may never happen at all. The following are promises conditional in such a way as to keep the promise outside the one-year clause, the condition being an event that may possibly happen within one year and the required performance being one that may possibly be completed within one year, even though it is also true that the event may not happen for many years or may never happen at all: a promise to pay money when X is married; to charter a ship to the promisee if the promisor shall thereafter buy it; to pay money when specified work is begun or is completed; to render performance on the return of a ship; to perform on the termination of pending litigation; to account for proceeds after a sale is effected; to render a performance on a date to be fixed by one of the parties or a third party; to make a bequest by will or to pay money at the death of X. . . ."

■ Although it appears highly improbable that the contract could be performed within one year, we cannot say that the terms of the contract made performance impossible within that period; therefore, it is our opinion that this contract is not void under the terms of Rem. Rev. Stat., § 5825 (1).

Respondents argue that this contract falls within the purview of Rem. Rev. Stat., § 5836-4 [P.P.C. § 854-7], the pertinent portion of which reads:

"(1) A contract to sell or a sale of any goods or choses in action exceeding the value of $50 shall not be enforceable by action unless the buyer shall accept part of the goods or choses in action so contracted to be sold or sold, and actually receive the same, or give something in earnest to bind the contract, or in part payment, or unless some note or memorandum in writing of the contract or sale be signed by the party to be charged or his agent in that behalf. . . ."

■ We are of the opinion that Rem. Rev. Stat., § 5836-4, does not apply, for the reason that the contract involved herein is not a contract to sell. By the terms of the agreement, appellant was to have a twenty-five percent interest in the joint venture, but all of the stock was to be held by Whaley and Dent until they had been repaid their investment. No transfer of ownership was involved.

■ Respondents also argue that the action, based on an oral contract, is barred by the statute of limitations. We find no merit in this argument and deem it unnecessary to set forth herein the evidence bearing on this point. It suffices to say that there was no evidence showing that Whaley and Dent had received, from earnings, the amount of their investment, nor that they refused to take, from earnings, the amount of their investment.

It further appears that, while they had made various offers of settlement, all at variance with the terms of the original agreement, in response to appellant's demand for a transfer of his interest to him, they never repudiated the original agreement. It does not appear from the record before us that the contract was breached more than three

years prior to the commencement of this action. Since the statute does not begin to run until there has been a breach, it follows that, on the record before us at this time, this action is not barred by the statute of limitations.

We conclude that the trial court erred in sustaining respondents' challenge to the sufficiency of the evidence, and that the judgment must be reversed and the cause remanded to the superior court for further trial. We leave to be determined by the court whether an entirely new trial shall be had or whether the evidence already introduced in behalf of appellant shall be used in conjunction with such further evidence as may be offered in behalf of the respective parties.

It is so ordered.

SCHWELLENBACH, C. J., MALLERY, GRADY, and WEAVER, JJ., concur.

---

February 8, 1952. Petition for rehearing denied.