[No. 47721–3. En Banc. July 8, 1982.]

LECTUS, INC., *Petitioner,* v. RAINIER NATIONAL BANK, ET AL, *Respondents.*

---

*Critchlow & Williams,* by *Michael E. de Grasse,* for petitioner.

*Graham & Dunn,* by *R. Bruce Johnston* and *Olson & Olson,* by *Orville B. Olson,* for respondents.

DIMMICK, J.—We are asked to adopt Restatement (Second) of Contracts § 217A (Tent. Drafts Nos. 1–7, 1973) (hereafter § 217A)[1] and thus recognize promissory estoppel

---

[1]Restatement (Second) of Contracts § 217A (Tent. Drafts Nos. 1–7, 1973) reads:

"Enforcement by Virtue of Action in Reliance

"(1) A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce the action or forbearance is enforceable notwithstanding the Statute of Frauds if injustice can be avoided only by enforcement of the promise. The remedy granted for breach is to be limited as justice requires.

"(2) In determining whether injustice can be avoided only by enforcement of the promise, the following circumstances are significant:

"(a) the availability and adequacy of other remedies, particularly cancellation and restitution;

"(b) the definite and substantial character of the action or forbearance in relation to the remedy sought;

"(c) the extent to which the action or forbearance corroborates evidence of

as a theory of recovery notwithstanding the statute of frauds, RCW 19.36.010.[2] We decline to do so at this time.

Lectus, Inc., petitioner herein, sued Rainier National Bank and Rainier Bancorporation, respondents, for breach of contract. At the opening of trial respondents made an extemporaneous motion based on the statute of frauds to exclude evidence of an alleged oral agreement. Treating the motion as one for summary judgment, the trial court granted the motion and dismissed petitioner's complaint despite an allegation of promissory estoppel. In an unpublished opinion the Court of Appeals, Division Three, upheld the dismissal of the complaint. We affirm.

Petitioner plans and presents educational programs concerning equal employment opportunities to both public agencies and private businesses. It presented such programs for the employees of respondent Rainier National Bank. In 1975, I. Q. Hurdle, petitioner's president, requested John Wilcox, a vice–president of respondent Rainier Bancorporation, to outline Rainier's commitments to petitioner. In a letter dated April 7, 1975, Wilcox stated:

> This letter has been prepared at your request to outline our understanding of the present commitment between Rainier Bancorporation and Lectus, Inc. I have added an estimate of our anticipated short–term need for consulting assistance from you, an implementation schedule for the committed work, and our plan for determining future needs. In order to provide a clear understanding of our position, I have approached each project

---

the making and terms of the promise, or the making and terms are otherwise established by clear and convincing evidence;

"(d) the reasonableness of the action or forbearance;

"(e) the extent to which the action or forbearance was foreseeable by the promisor."

[2]Washington State statute of frauds, RCW 19.36.010, provides in pertinent part:

"In the following cases, specified in this section, any agreement, contract and promise shall be void, unless such agreement, contract or promise, or some note or memorandum thereof, be in writing, and signed by the party to be charged therewith . . .: (1) Every agreement that by its terms is not to be performed in one year from the making thereof".

as it is presented on the time outline you furnished us.

1. EEO—Awareness—Development Skills (Two–day seminar)

We have committed to 8 awareness seminars for 1975 at a total of $10,724. We are now prepared to commit to 4 more to be completed no later than October 31, 1975 for an additional cost of no more than $8,724. I will leave it to you to talk with Marie Reeves to schedule the exact dates of the 4 additional seminars.

2. Affirmative Action Skills Development Training (One–day seminar)

It is my understanding that the development of this seminar is approximately 50% completed. To date we have spent $2,400. We would like you to participate in the complete development of this program but would like the total consulting fees not to exceed $5,000. The dates selected for the first series of seminars are June 24 and 26, July 10, 17 and 24, and August 13, 20, and 21.

3. Affirmative Action Implementation Methods (One–day seminar)

We would like to delay development of this program until we have a training director on our staff. There is some question at present whether we should do this ourselves. That, too, will be resolved within the next 60 days.

4. Upward Mobility—Females (One and one–half day seminar)

We would like to defer the development of this program until we have a resolution of our class–action suit. At that time we will request your assistance in the seminar development and presentation.

5. Upward Mobility—Minorities (One and one–half day seminar)

We intend to retain Lectus for assistance in developing this program. I would appreciate your contacting Marie Reeves to work out a revised course development and presentation schedule. When that is completed, please give me a firm consulting fee.

6. Supervisory Training Augmentation (One–half day seminar)

We intend to develop this program internally.

Petitioner claims on the basis of paragraph 4 of this letter and further talks with respondents' representatives that

a contract was formed for a program regarding upward mobility for females. Petitioner specifically alleges and respondents dispute that the letter was supplemented by an oral agreement by respondents to "ultimately" pay petitioner $240,000 over a 4– to 6–year period for services under paragraph 4 above. As a result of the alleged contract, petitioner claims it changed its position including establishing an office in Seattle in preparation of furnishing the assistance referred to in paragraph 4 of the letter.

Respondents did not purchase the services outlined in paragraph 4. However, respondents apparently did purchase the other programs specifically outlined in the letter. Petitioner's answers to interrogatories indicated that it began to obtain clients entirely through recommendations made by respondents. Petitioner also stated that because it was now dealing with clients on a nationwide basis it might benefit from having an office in Seattle.

Petitioner brought this damage suit for respondents' failure to purchase the program referred to in paragraph 4 relying upon theories of breach of contract and promissory estoppel. The trial court concluded that the statute of frauds, RCW 19.36.010, applied to render the alleged contract void and unenforceable. It then turned to the issue of promissory estoppel and concluded that it was not grossly unjust to apply the statute of frauds in this case. The court accordingly dismissed the action.

Under the statute of frauds, certain agreements, contracts and promises are void unless there is a written memorandum of the agreement signed by the party to be charged. The first issue before us is whether the alleged agreement between petitioner and respondents was one "that by its terms is not to be performed in 1 year from [its] making" and thus void under the statute.

The only matters before the trial court in considering the motion were the briefs of the parties, the pleadings and interrogatories answered by petitioner. Interrogatory 14, requesting petitioner to identify the commitment made by respondent, was answered: "Ultimately, the defendants

[respondents herein] agreed to pay $240,000.00 for services engaged in paragraph 4 of the Wilcox letter." Interrogatory 31, asking petitioner about compensation, was answered: "$60,000.00 for four years or $40,000.00 for 6 years; . . ." Drawing inferences most favorable to petitioner, the alleged contract was for $240,000, albeit to be paid for a period of years.

The answer to interrogatory 14 suggests that the statute of frauds would not apply because there is a possibility that the alleged contract could be performed in 1 year. *See Gronvold v. Whaley*, 39 Wn.2d 710, 237 P.2d 1026 (1951); *Dent Lumber & Shingle Co. v. Cedarhome Lumber Co.*, 141 Wash. 593, 252 P. 141 (1927). However, the response to interrogatory 31, specifically setting forth the terms of payment, brings this case under the rule of *Hendry v. Bird*, 135 Wash. 174, 237 P. 317 (1925). In *Hendry* this court held that a contract calling for payment of $3,000 in monthly installments for a period of 5 years was within the statute of frauds because *by the terms* of the contract it could not be performed within 1 year.

According to petitioner's own response, the contract was not to be performed within 1 year, but would extend over at least 4 years. Thus, the decision of the trial court was correct. The alleged contract could not be performed within 1 year and was thus void under the statute of frauds.

Petitioner's claim based upon a theory of promissory estoppel is speculative at best. In order to recover under the theory, five requisites must be met: (1) a promise which (2) the promisor should reasonably expect to cause the promisee to change his position and (3) which does cause the promisee to change his position (4) justifiably relying upon the promise, in such a manner that (5) injustice can be avoided only by enforcement of the promise. *Corbit v. J.I. Case Co.*, 70 Wn.2d 522, 424 P.2d 290 (1967).

We note, after reading the letter as a whole and reviewing all the alleged facts, that the reliance, if any, of petitioner upon paragraph 4 of the letter appears unreasonable and its purported actions were not justifiable under

the circumstances. Paragraph 4 of the letter was merely a future conditional promise. This is evident given the nature of the promises and statements made in the other paragraphs. The disputed oral agreement to "ultimately" pay money did not substantially strengthen petitioner's position. In addition, as admitted by petitioner it had other reasons for moving its offices to Seattle. Given the conditional nature of the purported promise, we hold reliance thereon to be unreasonable as a matter of law. Therefore, while petitioner urges us to change our law by now adopting § 217A in order that it may attempt to prove promissory estoppel, we decline to do so as this does not appear to be the factual situation necessary to effectuate justice discussed in *Klinke v. Famous Recipe Fried Chicken, Inc.,* 94 Wn.2d 255, 616 P.2d 644 (1980).

BRACHTENBACH, C.J., ROSELLINI, STAFFORD, UTTER, DOLLIVER, WILLIAMS, and PEARSON, JJ., and CUNNINGHAM, J. Pro Tem., concur.