[No. 61233-1.   En Banc.   August 25, 1994.]

ROBERT GREAVES, *Respondent*, v. MEDICAL IMAGING
SYSTEMS, INC., ET AL, *Petitioners.*

390

*Cozen and O'Connor,* by *Craig H. Bennion,* for petitioners.
*William E. Cullen, Jr., Cullen Law Offices, Peter S. Lewicki,* and *Lewicki Law Offices,* for respondent.

SMITH, J. — Petitioners Medical Imaging Systems, Inc., and James Kirker (MIS) seek review of a decision of the Court of Appeals, Division Two, reversing and remanding to the Lewis County Superior Court for trial a summary judgment in favor of MIS which dismissed with prejudice Respondent Robert Greaves' claim for breach of an oral employment contract. We reverse the Court of Appeals.

### STATEMENT OF FACTS

From January 1985 to April 1988, Respondent Robert Greaves (Respondent) was employed as manager of the diagnostic imaging department at Centralia General Hospital. In April 1988, Centralia General Hospital was purchased by the Sisters of Providence Hospital and became Providence Hospital-Centralia. Providence Hospital-Centralia and Respondent

Greaves entered into an employment contract under which both parties agreed that Mr. Greaves would be employed by the hospital as a nuclear medical technologist for 3 years at an annual salary of $36,000. During the summer of 1988, MIS moved its equipment to Providence Hospital-Centralia and began billing the hospital for services rendered. Respondent Greaves was an employee of the hospital, but the hospital subsequently billed MIS in the amount of its payments for his services.

In July 1988, Petitioner James Kirker, president of MIS, approached Respondent Greaves about employment with MIS. Respondent told Mr. Kirker he was concerned that if he accepted employment with MIS he would lose his position or be displaced if MIS lost its contract with Saint Joseph's Hospital in Aberdeen. Respondent was primarily concerned about being displaced by MIS employee Gary Fisher, who worked in the same medical field as he, but at Saint Joseph's Hospital. Petitioner Kirker assured Respondent Greaves this would not happen and offered him employment with MIS for 5 years at the same annual salary of $36,000. Although there was no written contract, Respondent Greaves accepted the offer and became a MIS employee on September 15, 1988. The only evidence of the oral employment contract between MIS and Respondent Greaves was two letters Petitioner Kirker sent him concerning his salary. However, no terms of employment were specified.[1] MIS subsequently lost its contract with Saint Joseph's Hospital, and in April 1989, Respondent Greaves was terminated from his position with MIS at Providence Hospital-Centralia and replaced by Gary Fisher, an MIS employee with more seniority who was displaced from his position at Saint Joseph's Hospital.

On July 20, 1990, the Lewis County Superior Court, the Honorable David R. Draper, granted summary judgment in favor of MIS and dismissed Respondent Greaves' claims with prejudice. The trial court determined there was a contract of employment for 5 years between MIS and Respon-

---

[1]The parties do not dispute the existence of an oral contract of employment.

dent Greaves which impliedly was subject to termination for cause. But the court held the contract void under the statute of frauds because it did not satisfy the requirement of a writing for contracts not performable within 1 year. The trial court also ruled that the statute of frauds could not be overcome by a claim of equitable estoppel nor by a claim of promissory estoppel.

Respondent appealed to the Court of Appeals, Division Two. On December 8, 1993, the Court of Appeals reversed the summary judgment decision of the trial court and remanded with directions to make factual determinations on each of the factors enumerated in the Restatement (Second) of Contracts § 139 (1981). MIS sought review. We granted review on March 9, 1994.

## QUESTIONS PRESENTED

The principal question in this case is whether this court should adopt Restatement (Second) of Contracts § 139. A collateral question is whether the Court of Appeals erred in reversing the summary judgment based upon Restatement (Second) of Contracts § 139.

## DISCUSSION

■ "When reviewing an order granting summary judgment, the appellate court engages in the same inquiry as the trial court."[2] An appellate court will affirm summary judgment if "there is no genuine issue as to any material fact", and "the moving party is entitled to a judgment as a matter of law".[3] "In summary judgment, all facts and reasonable inferences are to be considered in the light most favorable to the non-moving party,[4] and all questions of law are reviewed de novo."[5]

---

[2]*Syrovy v. Alpine Resources, Inc.*, 122 Wn.2d 544, 548 n.3, 859 P.2d 51 (1993).

[3]CR 56(c).

[4](Citing *Central Wash. Bank v. Mendelson-Zeller, Inc.*, 113 Wn.2d 346, 351, 779 P.2d 697 (1989)).

[5]*Caritas Servs., Inc. v. Department of Social & Health Servs.*, 123 Wn.2d 391, 402, 869 P.2d 28 (1994) (citing *Syrovy v. Alpine Resources, Inc.*, 122 Wn.2d 544, 548 n.3, 859 P.2d 51 (1993)).

## Implied Contract

■ "In Washington an employer has the right to discharge an employee, with or without cause, in the absence of a contract for a specified period of time."[6] In some circumstances, the courts will find an implied agreement between the employer and the employee if employment was intended to be permanent or for a certain duration.[7] In cases where an employee sues for damages because termination was without just cause, "[t]he courts will look at the alleged 'understanding', the intent of the parties, business custom and usage, the nature of the employment, the situation of the parties, and the circumstance of the case to ascertain the terms of the claimed agreement."[8]

Respondent Greaves claims he provided the "additional consideration" necessary for his oral employment contract to be construed as an implied contract. He asserts he could thus only be terminated by Petitioner MIS for cause.

■ In *Roberts v. ARCO*,[9] the plaintiff claimed he could only be discharged for cause because the circumstances surrounding his agreement created an implied contract between the parties.[10] The court in that case concluded that a contract for " 'permanent' or 'steady' employment (as opposed to either 'temporary' or 'lifetime' employment) is terminable by the employer only for just cause if: (1) there is an *implied agreement* to that effect, *or* (2) the employee gives *consideration in addition to* the contemplated services."[11] The court observed

---

[6]*Roberts v. ARCO*, 88 Wn.2d 887, 891, 568 P.2d 764 (1977) (citing *Webster v. Schauble*, 65 Wn.2d 849, 400 P.2d 292 (1965)); *accord Lasser v. Grunbaum Bros. Furniture Co.*, 46 Wn.2d 408, 281 P.2d 832 (1955).

[7]In *Perry v. Sindermann*, 408 U.S. 593, 33 L. Ed. 2d 570, 92 S. Ct. 2694 (1972), the United States Supreme Court recognized an implied agreement between respondent teacher and a university despite absence of a written contract after respondent had been employed as a teacher in the state college and university system for over 10 years and had some form of job tenure.

[8]*Roberts*, at 894.

[9]*Roberts*, at 887.

[10]*Roberts*, at 889.

[11]*Roberts*, at 894.

that neither an assurance of "steady employment" nor the plaintiffs understanding that he would be employed as long as he performed his work in a satisfactory manner could reasonably establish evidence of an implied agreement.[12] The court indicated it would look to "the alleged 'understanding', the intent of the parties, business custom and usage, the nature of the employment, the situation of the parties, and the circumstance of the case . . . ".[13] Since the plaintiff in *Roberts* only provided evidence of his "own personal understanding that he would be employed as long as he did his job in a satisfactory manner", the court found no evidence of an implied agreement.[14]

Another factor in determining an implied agreement is whether there is "consideration *in addition to* required services which results in a detriment to the employee and a benefit to the employer."[15] The plaintiff in *Roberts* contended that his length of service and his forgoing other job opportunities was sufficient consideration to "establish a contractual relationship between the parties".[16] The court disagreed and held that merely forgoing other job opportunities was not sufficient independent consideration to defeat an employer's right to terminate employment at will.[17]

In this case, Respondent Greaves contends he could have been terminated only for cause because the circumstances surrounding his employment by MIS gave rise to an implied contract. Under *Roberts v. ARCO, supra,* Respondent Greaves' agreement merely to transfer his employment from

---

[12]*Roberts*, at 895.

[13]*Roberts*, at 894 (citing *Perry v. Sindermann*, 408 U.S. 593, 33 L. Ed. 2d 570, 92 S. Ct. 2694 (1972)).

[14]*Roberts*, at 895.

[15]*Roberts*, at 895 (citing Robert A. Brazener, Annotation, *Comment Note. — Validity and Duration of Contract Purporting To Be for Permanent Employment,* 60 A.L.R.3d 226, 233 (1974)).

[16]*Roberts*, at 895.

[17]*Roberts*, at 895-96 (citing *Heideman v. Tall's Travel Shops, Inc.*, 192 Wash. 513, 73 P.2d 1323 (1937)).

Providence Hospital-Centralia to MIS is not sufficient independent consideration to support an implied contract. Thus, the employment contract between Respondent Greaves and Petitioner MIS was terminable by MIS without cause.

■ Respondent Greaves relies upon *Thompson v. St. Regis Paper Co.*[18] to support his claim that because of his 5-year agreement with MIS, he justifiably relied upon MIS' promise of employment. In *Thompson,* this court concluded that an employer would be held to promises in an employment manual if the employer creates "an atmosphere of job security and fair treatment with promises *of specific treatment in specific situations*", thereby inducing an employee to remain on the job and not actively seek other employment.[19] However, *Thompson,* and the other cases cited by Respondent Greaves, can be distinguished from the case now before this court because those cases involved employee manuals characterizing company policy which would "lead to obligations that govern the employment relationship."[20] In this case, Petitioner MIS did not provide Respondent Greaves with an employee manual. It merely offered him employment at the same salary and benefits as his previous job with Providence Hospital-Centralia, but for 2 years longer than his contract with Providence. It cannot be concluded that this offer, without more, created an atmosphere of job security.

## Statute of Frauds

Petitioner contends the oral employment contract is unenforceable under the statute of frauds. The Washington statute of frauds, RCW 19.36.010, provides:

> *In the following cases, specified in this section, any agreement, contract and promise shall be void, unless such agree-*

---

[18]102 Wn.2d 219, 685 P.2d 1081 (1984).

[19]*Thompson,* at 230.

[20]*Thompson,* at 229. Respondent Greaves also cites *Toussaint v. Blue Cross & Blue Shield,* 408 Mich. 579, 610, 292 N.W.2d 880 (1980) and *Siekawitch v. Washington Beef Producers, Inc.,* 58 Wn. App. 454, 793 P.2d 994 (1990).

*ment, contract or promise, or some note or memorandum
thereof, be in writing, and signed by the party to be charged
therewith, or by some person thereunto by him lawfully autho-
rized, that is to say: (1) Every agreement that by its terms is not
to be performed in one year from the making thereof; (2) every*
special promise to answer for the debt, default, or misdoings
of another person; (3) every agreement, promise or undertak-
ing made upon consideration of marriage, except mutual
promises to marry; (4) every special promise made by an
executor or administrator to answer damages out of his own
estate; (5) an agreement authorizing or employing an agent or
broker to sell or purchase real estate for compensation or a
commission.

(Italics ours.)

RCW 19.36.010 supplants the English statute of
frauds.[21] In commenting on the statute of frauds, this court
has observed that "[t]he general rule, almost universally
adhered to, is that a contract for personal services which by
its terms is not to be performed within a year must be in
writing."[22]

Since Respondent Greaves' contract for employment with
MIS was for a term of 5 years, RCW 19.36.010 requires that
it be in writing to be enforceable, although this court has
concluded that it is inequitable to apply the statute of frauds
under some circumstances. Referring to such circumstances
in *Miller v. McCamish,*[23] the court stated:

The purpose and intent of the statute of frauds is to pre-
vent fraud, and not to aid in its perpetration, and courts,
particularly the courts of equity, will, so far as possible,
refuse to allow it to be used as a shield to protect fraud, or an
instrument . . . [by which] to perpetrate a fraud . . . [.] On the
contrary, the courts will endeavor in every proper way to
prevent the use of the statute of frauds as an instrument of
fraud or as a shield for a dishonest and unscrupulous per-

---

[21]John W. Smith, *Frauds and the Statute of Frauds* ch. 73, at 1093-94 (1907);
*Richards v. Redelsheimer,* 36 Wash. 325, 78 P. 934 (1904).

[22]*Dudley v. Boise Cascade Corp.,* 76 Wn.2d 466, 470, 457 P.2d 586 (1969) (citing
*Building Serv. Employees Int'l Union, Lodge 6 v. Seattle Hosp. Coun.,* 18 Wn.2d 186,
138 P.2d 891 (1943)); *Cope v. School Dist. 122,* 149 Wash. 76, 270 P. 120 (1928); *Union
Sav. & Trust Co. v. Krumm,* 88 Wash. 20, 152 P. 681 (1915); 49 Am. Jur. *Statute of
Frauds* § 52, at 410 (1943); 3 Samuel Williston, *Contracts* § 495, at 585 (3d ed. 1960).

[23]78 Wn.2d 821, 825-26, 479 P.2d 919 (1971) (citing 49 Am. Jur. *Statute of Frauds*
§ 578 (1943)).

son, *and under modern theory of practice, what a court of equity would do, law courts, under proper allegations, will no doubt also do.* The courts do not tolerate the use of the statute of frauds to enable one to take advantage of his own wrong. As has been said, *that principle of law or legislative enactment would be an anomaly which, while attempting to prevent fraud, would become an instrumentality for the perpetration of fraud.*

In *Miller* the court further observed that:

At the outset it is relevant to note that the statute of frauds has never been given "blind" or absolute implementation and application by the courts. From earliest times the English courts of chancery exhibited a willingness, and have proclaimed and granted, suitable relief in those instances where strict application of the statute of frauds, resulting in total avoidance of the parties' oral agreement, would produce an inequitable result. Thus, courts have long granted equitable relief both in the form of specific performance and in the form of recovery in quantum meruit based upon unjust enrichment where sufficient showing or proof of part performance by the parties to the oral agreement warrants the granting of such relief.[24]

But this court has also unequivocally concluded that the statute of frauds "must be strictly construed . . . and [not applied] to cases which are not squarely within its terms".[25]

### Doctrine of Estoppel

■ Respondent Greaves contends his oral employment contract should be taken out of the statute of frauds and rendered enforceable under the theories of equitable estoppel and promissory estoppel. The Court of Appeals was correct in rejecting the equitable estoppel argument because "[e]quitable estoppel . . . is not available for 'offensive' use by plaintiffs."[26] The Court of Appeals was also correct in recog-

---

[24]*Miller*, at 825.

[25]*Bell v. Hegewald*, 95 Wn.2d 686, 691, 628 P.2d 1305 (1981) (quoting *Chambers v. Kirkpatrick*, 145 Wash. 277, 280, 259 P. 878 (1927)); *Gronvold v. Whaley*, 39 Wn.2d 710, 237 P.2d 1026 (1951).

[26]*Greaves v. Medical Imaging Sys., Inc.*, 71 Wn. App. 894, 898, 862 P.2d 643 (1993) (citing *Chemical Bank v. WPPSS*, 102 Wn.2d 874, 901-02, 691 P.2d 524 (1984), *cert. denied sub nom. Haberman v. Chemical Bank*, 471 U.S. 1065, 471 U.S. 1075, 85 L. Ed. 2d 497, 85 L. Ed. 2d 510, 105 S. Ct. 2140, 105 S. Ct. 2154 (1985)).

nizing, however, that Respondent Greaves could rely upon promissory estoppel.

The doctrine of promissory estoppel has been acknowledged by this court in *Klinke v. Famous Fried Chicken, Inc.*:[27]

> The purpose of promissory estoppel is "to make a promise binding, under certain circumstances, without consideration in the usual sense of something bargained for and given in exchange. If the promisee's performance was requested at the time the promisor made his promise and that performance was bargained for, the doctrine is inapplicable."

(Citations omitted.)

Both § 90 and § 139 of the Restatement (Second) of Contracts (1981) recognize two theories of promissory estoppel. Section 90 provides:

> (1) A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires.
>
> (2) A charitable subscription or a marriage settlement is binding under Subsection (1) without proof that the promise induced action or forbearance.

This court recognizes the theory of promissory estoppel under § 90 of the Restatement (Second) of Contracts, but has not recognized that theory under § 139, nor has it recognized § 139 itself.[28]

In his efforts to defeat application of the statute of frauds, Respondent Greaves claims promissory estoppel under § 139 of the Restatement (Second) of Contracts (1981), which provides:

> (1) A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce the action or forbearance is enforceable notwithstanding the Statute of Frauds if injus-

---

[27] 94 Wn.2d 255, 261 n.4, 616 P.2d 644 (1980) (quoting *Raedeke v. Gibraltar Sav. & Loan Ass'n*, 10 Cal. 3d 665, 672-73, 517 P.2d 1157, 111 Cal. Rptr. 693 (1974)).

[28] *Corbit v. J.I. Case Co.*, 70 Wn.2d 522, 538, 424 P.2d 290 (1967).

tice can be avoided only by enforcement of the promise. The remedy granted for breach is to be limited as justice requires. (2) In determining whether injustice can be avoided only by enforcement of the promise, the following circumstances are significant:

(a) the availability and adequacy of other remedies, particularly cancellation and restitution;

(b) the definite and substantial character of the action or forbearance in relation to the remedy sought;

(c) the extent to which the action or forbearance corroborates evidence of the making and terms of the promise, or the making and terms are otherwise established by clear and convincing evidence;

(d) the reasonableness of the action or forbearance;

(e) the extent to which the action or forbearance was foreseeable by the promisor.

Under the principle of reliance, § 139 squarely challenges the formal writing requirement of the statute of frauds.[29] One commentator has observed that

[s]ection 139 of the *Restatement (Second) of Contracts* takes a broad view of the scope of reliance and recognizes the possibility of using promissory estoppel to avoid the statute: it suggests "circumstances [that] are significant" when courts are "determining whether injustice can be avoided only by enforcement of [a] promise" that is unenforceable within the statute.[30]

■ We have consistently declined to adopt § 139, although we have considered it in several prior cases.[31]

In *Klinke v. Famous Recipe Fried Chicken, Inc., supra,* the Court of Appeals had expressly adopted § 217A of the Restatement of Contracts to permit the plaintiff "to directly enforce an oral promise or agreement otherwise within the statute of frauds."[32] The plaintiff in that case brought an action claiming

---

[29]Jay M. Feinman, *Promissory Estoppel and Judicial Method,* 97 Harv. L. Rev. 678, 695 (1984).

[30](Footnote omitted.) Feinman, at 695 (citing *Restatement (Second) of Contracts* § 139 cmt. b (1979)).

[31]*Klinke; Lige Dickson Co. v. Union Oil Co.,* 96 Wn.2d 291, 635 P.2d 103 (1981); *Lectus, Inc. v. Rainier Nat'l Bank,* 97 Wn.2d 584, 647 P.2d 1001 (1982); *Family Med. Bldg., Inc. v. Department of Social & Health Servs.,* 104 Wn.2d 105, 702 P.2d 459 (1985).

[32]*Klinke,* at 260-61. Section 217A of the tentative drafts later became and is identical to Restatement (Second) of Contracts § 139 (1981).

estoppel against Famous Recipe Fried Chicken for breach of an oral agreement.[33] Under the agreement plaintiff was to open and operate a fried chicken franchise outlet in the Tacoma, Washington area. Relying upon that oral agreement, plaintiff quit his job in Alaska, moved to Tacoma and began negotiations for acquisition and development of a suitable location.[34] Famous Recipe Fried Chicken subsequently abandoned its efforts to qualify and register as a franchise dealer in Washington. Mr. Klinke then sued.[35] This court determined it was not necessary to adopt § 217A because there were sufficient facts to show that defendant may have promised to execute a written franchise agreement.[36] The court noted that plaintiff might have an action based upon promissory estoppel if defendant breached its subsequent promise to reduce the contract to a writing.[37]

The following year, 1981, this court in *Lige Dickson Co. v. Union Oil Co.*[38] again addressed the issue whether a contract within the statute of frauds may be enforceable under the doctrine of promissory estoppel. That case involved a contract governed by the Uniform Commercial Code. This court declined to adopt and apply § 217A (now § 139) to the sale of goods to avoid circumvention of the UCC.[39] Although the court recognized that "[t]he Restatement (Second) of Contracts § 217A [now § 139] authorizes enforcement of a promise which induced action or forbearance by a promisee notwithstanding the statute of frauds",[40] it predicted

---

[33]*Klinke*, at 256.

[34]*Klinke*, at 257-58.

[35]*Klinke*, at 258.

[36]*Klinke*, at 260.

[37]*Klinke*, at 259. Citing *In re Estate of Nelson*, 85 Wn.2d 602, 537 P.2d 765 (1975) and the Restatement of Contracts § 178 cmt. f (1932), the court stated that "a promise to make a memorandum, if relied upon, 'may give rise to an effective promissory estoppel if the Statute [of Frauds] would otherwise operate to defraud.'" *Klinke*, at 259-60.

[38]96 Wn.2d 291, 635 P.2d 103 (1981).

[39]*Lige Dickson, at* 300.

[40]*Lige Dickson,* at 295.

increased litigation and confusion from the erosion of the UCC if § 217A were adopted in that case.[41]

In *Lectus, Inc. v. Rainier Nat'l Bank*,[42] this court again declined to adopt § 217A (now § 139) as a theory of recovery contrary to the statute of frauds, RCW 19.36.010. The court held a contract void under the statute of frauds because it could not be performed within 1 year. The court concluded that petitioner's claim relying upon promissory estoppel to avoid the statute of frauds was "speculative at best",[43] and under the facts in the case it would not be "grossly unjust to apply the statute of frauds".[44]

Another case addressing § 139 is *Family Med. Bldg., Inc. v. Department of Social & Health Servs.*[45] In that case § 139 was only briefly discussed, but this court concluded it was not necessary to adopt it because the parties had entered into an express contract.[46]

Under the facts of this case, we see no reason to adopt Restatement (Second) of Contracts § 139 (1981). The Court of Appeals was in error in relying upon it.

We therefore reverse the Court of Appeals and uphold the order of summary judgment granted by the trial court to Medical Imaging Systems, Inc., and James Kirker.

UTTER, DOLLIVER, DURHAM, GUY, JOHNSON, and MADSEN, JJ., concur.

ANDERSEN, C.J., and BRACHTENBACH, J., concur in the result.

---

[41]*Lige Dickson*, at 300.

[42]97 Wn.2d 584, 647 P.2d 1001 (1982).

[43]*Lectus, Inc.*, at 589.

[44]*Lectus, Inc.*, at 588.

[45]104 Wn.2d 105, 702 P.2d 459 (1985).

[46]*Family Medical*, at 112.