IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| PETER SCHAUB, an individual, CLOUDY SKIES PROPERTIES, LLC, a Washington limited liability company, | ) ) ) ) | No. 78439-1-I |
| Appellants, | ) ) ) | DIVISION ONE |
| v. | ) ) | |
| JPMORGAN CHASE BANK N.A.; BAYVIEW LOAN SERVICING, LLC; NORTHWEST TRUSTEE SERVICES, INC., | ) ) ) ) ) ) | |
| Respondents, | ) ) | UNPUBLISHED OPINION |
| and | ) ) | FILED: July 1, 2019 |
| DOE DEFENDANTS 1-10, | ) ) ) | |
| Defendants. | ) ) ) | |

SMITH, J. — Peter Schaub and his closely held limited liability company, Cloudy Skies Properties LLC (collectively Schaub), lost a rental property in a nonjudicial foreclosure. Schaub brought various statutory and estoppel claims against JPMorgan Chase Bank N.A. (JPMorgan), Bayview Loan Servicing LLC (Bayview), and Northwest Trustee Services Inc. (NWTS) (collectively Respondents) related to the foreclosure. The trial court dismissed all of Schaub's claims under CR 12(b)(6). Because Schaub did not state any claims

on which relief can be granted, even if we presume that the facts alleged in his complaint are true, we affirm.

FACTS

Schaub executed a promissory note and deed of trust in favor of JPMorgan in October 2007, related to a rental property in Seattle. In December 2013, JPMorgan assigned the deed of trust to Bayview and the assignment was recorded the next month. In June 2014, Bayview executed and recorded an Appointment of Successor Trustee, naming NWTS as a successor trustee.

In January 2015, NWTS executed a Notice of Trustee's Sale of the Property scheduled for May 22, 2015. Schaub alleges in his complaint that the notice wrongfully identified Bayview as the beneficiary of the deed of trust because JPMorgan was still the holder of the note and therefore the actual beneficiary under the deed of trust. For this reason, Schaub alleges that Bayview had no right to foreclose the property.

On April 14, 2015, 38 days before the scheduled sale, Brian Carl, a housing counselor approved by the United States Department of Housing and Urban Development, submitted a loss mitigation application to Bayview on Schaub's behalf. Schaub alleges that the application was complete.

Shortly thereafter, Bayview sent Schaub a letter dated April 21, 2015, which stated that Bayview was "unsuccessful in obtaining from [Schaub] the following documents," followed by a blank line with no documents identified. The letter explained that Bayview was "unable to complete [its] review of [Schaub's] loan workout request without this information." The letter goes on to state,

2

"Incomplete Information Final Notice – Your request for a Home Affordable Modification cannot be completed as of April 21, 2015 because we have not yet received all of the requested documentation." (Boldface omitted.) In a separate section, the letter states, "After we receive all required documentation, we will process your request as quickly as possible. While we consider your request, your home will not be referred to foreclosure. Any scheduled foreclosure sale will not occur pending our determination." (Boldface omitted.) Schaub alleges that based on this letter, he "reasonably believed that his loss mitigation application was complete . . . and the scheduled foreclosure . . . would be stopped."

On May 13, 2015, eight days before the scheduled sale, Bayview contacted Carl and requested "a substantial amount of additional documentation related to the loss mitigation application." Schaub alleges that Bayview e-mailed Carl a list of requested documents, but his complaint does not state whether or not he provided those documents to Bayview.

On May 22, 2015, NWTS sold the Property to a third party. Schaub alleges that the trustee's deed falsely asserted that Bayview complied with all legal requirements and held the note secured by the deed of trust. Carl learned about the sale on May 29, 2015, and requested that NWTS rescind the sale because, among other reasons, Bayview had received a "facially complete loss mitigation application." NWTS refused to rescind the sale.

Schaub initiated this action against JPMorgan, Bayview, NWTS, and Doe Defendants 1-10 in May 2017. His complaint alleges actions for unjust enrichment and violation of chapter X, 12 C.F.R. § 1024, which implements the

3

Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2601 to 2617; the deeds of trust act (DTA), chapter 61.24 RCW; the Consumer Loan Act (CLA), chapter 31.04 RCW; and the Consumer Protection Act (CPA), chapter 19.86 RCW. No declarations related to these claims were filed by any party. JPMorgan moved to dismiss Schaub's claims against it under CR 12(b)(6), arguing that it had no liability to Schaub after it transferred its interest in the note and the deed of trust to Bayview. The trial court granted JPMorgan's motion.

Bayview and NWTS also moved to dismiss Schaub's claims under CR 12(b)(6), arguing that Schaub's claims failed because they were predicated on a violation of RESPA, which applies to owner-occupied properties, not rental properties. The trial court dismissed Schaub's RESPA, DTA, CLA, and CPA claims against Bayview and NWTS but granted Schaub leave to amend his complaint to allege promissory or equitable estoppel claims "with particularity."

Schaub then filed an amended complaint, which mirrored the original complaint but included a new claim against all parties for promissory and equitable estoppel. Bayview and NWTS moved for dismissal of the new claim under CR 12(b)(6), arguing that there was no promise or reliance. The trial court granted the motion. Schaub appeals.

ANALYSIS

Schaub argues that the trial court erred when it dismissed his RESPA, promissory estoppel, DTA, CLA, and CPA claims under CR 12(b)(6). We disagree.

Under CR 12(b)(6), the court may dismiss claims for "failure to state a claim upon which relief can be granted." Courts grant CR 12(b)(6) motions to dismiss "'only in the unusual case in which plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief.'" Kinney v. Cook, 159 Wn.2d 837, 842, 154 P.3d 206 (2007) (internal quotation marks omitted) (quoting Hoffer v. State, 110 Wn.2d 415, 420, 755 P.2d 781 (1988), adhered to on recons., 113 Wn.2d 148, 776 P.2d 963 (1989)). "The court presumes all facts alleged in the plaintiff's complaint are true and may consider hypothetical facts supporting the plaintiff's claims." Kinney, 159 Wn.2d at 842. We review a trial court's ruling to dismiss a claim under CR 12(b)(6) de novo. Kinney, 159 Wn.2d at 842.

### Bayview and NWTS as Agents of JPMorgan

Schaub argues that the trial court erred in dismissing his claims against JPMorgan because he alleged that JPMorgan was the true holder of the note and Bayview and NWTS acted as agents for JPMorgan. Because we must presume the allegations in Schaub's complaint are true, we agree that dismissal of JPMorgan was not proper.

Here, the note is not part of the record, but Schaub alleges in his complaint that NWTS wrongfully identified Bayview as the beneficiary of the deed of trust in the Notice of Trustee's Sale and that JPMorgan retained the note "as owner and holder of the obligation." We presume that this allegation is true. Therefore, dismissal of Schaub's claims against JPMorgan on a theory that Bayview held the note, without proof of that fact, was error.

Furthermore, "Washington's deed of trust act contemplates that the security instrument will follow the note, not the other way around." Bain v. Metro. Mortg. Grp., Inc., 175 Wn.2d 83, 104, 285 P.3d 34 (2012). Therefore, we are not persuaded by JPMorgan's claim that it was no longer the holder of the note simply because it assigned its interest in the deed of trust to Bayview.

JPMorgan argues that the Notices of Trustee's Sale filed with Schaub's complaint show that Bayview was the holder of the note because they identify Bayview as the beneficiary of the deed of trust and RCW 61.24.030(7)(a) requires the trustee to verify that the beneficiary is the holder of the note before a sale. JPMorgan also argues that the language in the trustee's deed identifying Bayview as the assigned beneficiary is presumptively true because RCW 61.24.040(7) requires the trustee to verify a successor-in-interest's ownership. Again, because Schaub alleges that NWTS wrongfully identified Bayview as the beneficiary and we must presume that this allegation is true, JPMorgan's reliance on these documents is misplaced.

In short, the trial court erred by dismissing JPMorgan based solely on JPMorgan's assignment of the deed of trust. That said, for the reasons described below, the trial court did not err in dismissing Schaub's claims on their merits. Therefore, the ultimate dismissal of Schaub's claims against JPMorgan was proper.

## _Equitable Estoppel and RESPA Claim_

Schaub argues that the trial court erred in dismissing his RESPA claim because the Respondents should be equitably estopped from arguing that Bayview had no duties to him under that statute. We disagree.

As an initial matter, Schaub does not dispute that the RESPA loss mitigation procedures apply to only owner-occupied properties. 12 C.F.R. § 1024.30(c)(2) ("The procedures set forth in §§1024.39 through 1024.41 of this subpart only apply to a mortgage loan that is secured by a property that is a borrower's principal residence."). For this reason, he cannot maintain a RESPA claim against Respondents.

To avoid the inapplicability of RESPA, Schaub relies on the doctrine of equitable estoppel and alleges that Bayview induced him to submit a loss mitigation application and then led him to believe that his application was facially complete and foreclosure would be prohibited in accordance with RESPA's loss mitigation procedures. Specifically, he alleges that foreclosure was not proper because he submitted a facially complete application more than 37 days before the sale, as required to stop foreclosure:

> _Prohibition on foreclosure sale._ If a borrower submits a complete loss mitigation application after a servicer has made the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process but more than 37 days before a foreclosure sale, a servicer shall not move for foreclosure judgment or order of sale, or conduct a foreclosure sale . . .

12 C.F.R. § 1024.41(g).

But equitable estoppel is not available for offensive use by plaintiffs. Greaves v. Med. Imaging Sys., Inc., 124 Wn.2d 389, 397-98, 879 P.2d 276

(1994). As such, Schaub cannot rely on that doctrine to make an inapplicable statute suddenly applicable. Promissory estoppel is the proper doctrine for asserting such a claim. Greaves, 124 Wn.2d at 397-98. Therefore, the trial court properly dismissed Schaub's RESPA and equitable estoppel claims.

*Promissory Estoppel*

Schaub argues that the trial court erred in dismissing his claims of promissory estoppel. We disagree.

To prevail on a promissory estoppel claim, the plaintiff must prove:

> (1) a promise, (2) that promisor should reasonably expect to cause the promisee to change his position, and (3) actually causes the promisee to change position, (4) justifiably relying on the promise, (5) in such a manner that injustice can be avoided only by enforcement of the promise.

McCormick v. Lake Wash. Sch. Dist., 99 Wn. App. 107, 117, 992 P.2d 511 (1999).

Here, the first element of estoppel is not met because Bayview did not make a promise not to foreclose. Schaub alleges that Bayview's April 21, 2015, letter indicated that Schaub filed a complete application and that it would therefore forebear all foreclosure efforts. But contrary to Schaub's claim, the letter did not state that his application was complete. Although the letter did not explain what specific documentation was missing from Schaub's application, it did inform him that Bayview could not complete its review because it had not received all requested documentation. And, it warned him that foreclosure may proceed if he failed to make his loan payments:

> We have been unsuccessful in obtaining from you the following documents:

8

[blank]

We are unable to complete our review of your loan workout request without this information.

*If your loan is delinquent, collection/foreclosure activity currently in progress will continue to proceed during the review process of your request for a workout. This letter and the loan workout review process shall not waive any of our rights or your obligations under the note and other loan documents. In other words, you are responsible to continue making your loan payments.*

. . . Even if we are able to approve you for a foreclosure alternative prior to a sale, a court with jurisdiction over the foreclosure proceeding (if any) or public official charged with carrying out the sale may not halt the scheduled sale.

. . . .

Incomplete Information Final Notice – Your request for a Home Affordable Modification cannot be completed as of April 21, 2015 because we have not received all of the requested documentation.

(Boldface omitted.) The letter then went on to explain the process that would occur going forward:

After we receive all required documentation, we will process your request as quickly as possible. While we consider your request, your home will not be referred to foreclosure. Any scheduled foreclosure sale will not occur pending our determination.

(Boldface omitted.) Arguably, the language that "[a]ny scheduled foreclosure sale will not occur pending our determination" was a *conditional* promise not to foreclose. But as explained in that paragraph, foreclosure is postponed once the lender "receive[s] all required documentation." Furthermore, the letter stated that required documents were still missing from Schaub's application, so the conditional promise was not triggered. Therefore, Schaub has not satisfied the first element of estoppel.

9

Furthermore, Schaub has not alleged facts that satisfy the fourth element of estoppel: justifiable reliance. Specifically, Schaub states in his complaint that Bayview requested "a substantial amount" of additional documentation eight days before the scheduled foreclosure sale. This request for additional documentation, in combination with the letter stating that Bayview could not complete Schaub's loss mitigation application, should have put Schaub on notice that Bayview had not received "all required documentation" and that the foreclosure sale could proceed as scheduled. Therefore, he could no longer justifiably rely on any promise not to foreclose, especially given the fact that he still had time to enjoin the foreclosure sale under the DTA. RCW 61.24.130(2) (requiring a lawsuit to enjoin foreclosure be brought within five days of the sale).

Schaub argues that Bayview's conditional promise was triggered by his submission of a "facially" complete application. But nothing in the letter promises to stop foreclosure based on the receipt of a facially complete application. Additionally, Schaub does not explain what a "facially" complete application includes or how it differs from a complete application. Therefore, this argument is not persuasive.

Schaub next argues, for the first time in his reply brief, that it is not known whether the additional information requested by Bayview was necessary to complete the application or was simply "miscellaneous information to clarify information already received or replacement of information that had become stale." But "[a]n issue raised and argued for the first time in a reply brief is too late to warrant consideration." Cowiche Canyon Conservancy v. Bosley, 118

Wn.2d 801, 809, 828 P.2d 549 (1992). Therefore, we do not consider this argument.

## DTA

Schaub argues that the trial court erred in dismissing his DTA claims. We disagree.

The DTA "creates a three-party mortgage system allowing lenders, when payment default occurs, to nonjudicially foreclose by trustee's sale." Albice v. Premier Mortg. Servs. of Wash., Inc., 174 Wn.2d 560, 567, 276 P.3d 1277 (2012). "The act furthers three goals: (1) that the nonjudicial foreclosure process should be efficient and inexpensive, (2) that the process should result in interested parties having an adequate opportunity to prevent wrongful foreclosure, and (3) that the process should promote stability of land titles." Albice, 174 Wn.2d at 567.

The DTA provides that "[a]nyone having any objection to the sale on any grounds whatsoever will be afforded an opportunity to be heard as to those objections if they bring a lawsuit to restrain the sale pursuant to RCW 61.24.130." Former RCW 61.24.040(1)(f)(IX) (2012). The lawsuit must be brought within five days of the sale. RCW 61.24.130(2) ("No court may grant a restraining order or injunction to restrain a trustee's sale unless the person seeking the restraint gives five days notice to the trustee of the time when, place where, and the judge before whom the application for the restraining order or injunction is to be made."). The DTA also provides that "[f]ailure to bring such a lawsuit may result

11

in a waiver of any proper grounds for invalidating the Trustee's sale." Former RCW 61.24.040(1)(f)(IX).

In Albice, the Supreme Court held that "[t]he word 'may' indicates the legislature neither requires nor intends for courts to strictly apply waiver." Albice, 174 Wn.2d at 570. Therefore, waiver should be applied "only where it is equitable under the circumstances and where it serves the goals of the act." Albice, 174 Wn.2d at 570. Waiver is appropriate "where a party (1) received notice of the right to enjoin the sale, (2) had actual or constructive knowledge of a defense to foreclosure prior to the sale, and (3) failed to bring an action to obtain a court order enjoining the sale." Albice, 174 Wn.2d at 569. "[I]n determining whether waiver applies, the second goal [of the DTA]—that the nonjudicial foreclosure process should result in is interested parties having an adequate opportunity to prevent wrongful foreclosure—becomes particularly important." Albice, 174 Wn.2d at 571. Allowing a borrower to delay asserting a defense until after a sale defeats the spirit and intent of the DTA. Albice, 174 Wn.2d at 570.

Here, Schaub's complaint alleges that he is entitled to remedies under the DTA because "[t]he misconduct alleged herein against Defendants constitutes: (1) fraud and misrepresentation; and (2) failure of NWTS to materially comply with the provisions of the DTA, for which Mr. Schaub is entitled to relief under RCW 61.24.127." On appeal, Schaub specifies that Bayview and NWTS violated the DTA in the following ways: the Assignment of Deed of Trust and Appointment of Successor Trustee in 2010 were improperly executed, the Notices of Trustee's Sales were improperly signed and notarized on different dates, the location of the

trustee's sale was not public, and the marketing of the Property was improper. But these alleged violations were all discoverable prior to the trustee's sale and Schaub does not allege that he did not have notice of them. Therefore, because Schaub "had actual or constructive knowledge of a defense to foreclosure prior to the sale" and he failed to use available presale remedies to enjoin the foreclosure sale, he waived his right to assert these defenses. Albice, 174 Wn.2d at 569.

Schaub argues that he "reasonably believed his remedies under the DTA would remain preserved" based on Bayview's alleged promise not to foreclose. But this is an estoppel argument. As described above, equitable estoppel is not available for offensive use by plaintiffs. Greaves, 124 Wn.2d at 397-98. Furthermore, his promissory estoppel claim fails because Schaub cannot show that Bayview promised not to foreclose or that he justifiably relied on that promise. Therefore, dismissal of his DTA claim was proper.

### CLA

For the first time in his reply brief, Schaub argues that the trial court erred in dismissing his CLA claim. Although Schaub alleges that the claim was "thoroughly" addressed in his opening brief, the pages cited reference the CLA only in passing and include no argument as to how Respondents violated the CLA. Therefore, his argument is not persuasive and we hold that Schaub waived the right to challenge the dismissal of his CLA claim on appeal. See Hall v. Feigenbaum, 178 Wn. App. 811, 817, 319 P.3d 61 (2014) ("We deem an issue not briefed to be waived."); Cowiche Canyon Conservancy, 118 Wn.2d at 809

("An issue raised and argued for the first time in a reply brief is too late to warrant consideration.").

## CPA

Schaub argues that the trial court erred in dismissing his CPA claims. We disagree.

To prevail on a CPA action, the plaintiff must prove the following elements: "'(1) [an] unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; [and] (5) causation.'" Klem v. Wash. Mut. Bank, 176 Wn.2d 771, 782, 295 P.3d 1179 (2013) (first alteration in original) (quoting Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wn.2d 778, 780, 719 P.2d 531 (1986)). A claim "may be predicated upon a per se violation of statute, an act or practice that has the capacity to deceive substantial portions of the public, or an unfair or deceptive act or practice not regulated by statute but in violation of public interest." Klem, 176 Wn.2d at 787.

Similar to the claims addressed above, both of Schaub's per se and unfair practice CPA theories are based on the premise that Respondents violated their duty of good faith and committed an unfair practice by continuing the foreclosure of his property despite his submission of a facially complete loss mitigation application. Schaub's appellate briefing does not directly address the element of causation. Even so, under the facts alleged in his complaint, he cannot prove causation. Schaub received notice that Bayview needed more documents for his loss mitigation application eight days before the sale, which is within the time

14

required to enjoin the foreclosure under the DTA. Nevertheless, he did not pursue that available legal remedy to stop the sale. Therefore, Schaub's own conduct in failing to pursue a lawsuit under the DTA broke the chain of causation and caused his loss. Schaub cannot show that any alleged unfair practices by Respondents caused his damages and his CPA claim was properly dismissed.

## Attorney Fees

All parties request attorney fees and costs on appeal based on RAP 18.1 and the attorney fee clause in the deed of trust. We grant Bayview's request for fees and costs and deny all other parties' requests for fees and costs.

Attorney fees may only be awarded at the appellate level when authorized by a contract, a statute, or a recognized ground of equity. Labriola v. Pollard Grp., Inc., 152 Wn.2d 828, 839, 100 P.3d 791 (2004). Here, the deed of trust states:

> 26. Attorneys' Fees. Lender shall be entitled to recover its reasonable attorneys' fees and costs in any action or proceeding to construe or enforce any term of this Security Instrument. The term "attorneys' fees," whenever used in this Security Instrument, shall include without limitation attorneys' fees incurred by Lender in any bankruptcy proceedings or on appeal.

(Boldface omitted.) Additionally, RCW 4.84.330 provides for prevailing party attorney fees where a contract has a one-sided attorney fee clause.

Here, Schaub is not the prevailing party and, therefore, is not entitled to attorney fees under RCW 4.84.330. Furthermore, although the deed of trust specifies JPMorgan as the "Lender," Bayview took the deed of trust by assignment from JPMorgan and acquired all of JPMorgan's rights and obligations, including the right to attorney fees. Therefore, JPMorgan is not

15

entitled to fees but Bayview is because JPMorgan assigned its interest in the deed of trust to Bayview. Finally, NWTS is not entitled to fees because the deed of trust provides fees to the lender only, not the trustee.

Citing Stryken v. Panell, 66 Wn. App. 566, 572, 832 P.2d 890 (1992), JPMorgan argues that it is entitled to attorney fees even though it is no longer a party to the deed of trust. But Stryken involved attorney fees in an action where a contract was found to be void, not where there was an assignment of the contract. Here, JPMorgan assigned its interest in the deed of trust to Bayview. For that reason, Stryken is not controlling.

We affirm and grant Bayview attorney fees and costs on appeal, subject to its compliance with RAP 18.1.

WE CONCUR: