[No. 5961–4–II.   Division Two.   March 2, 1984.]

SILVERDALE HOTEL ASSOCIATES, ET AL, *Respondents*, v. THE LOMAS & NETTLETON COMPANY, ET AL, *Appellants*.

*Peter L. Slinn* (*Larry M. Lesh,* of counsel), for appellants.

*John Burgess* and *Paul R. Cressman,* for respondent Silverdale Hotel Associates.

*Herman S. Siqueland,* for respondent Wick Construction Company.

WORSWICK, J.—Once again we are called upon to deal with litigation arising out of that unfortunate but familiar occurrence: a grand plan for real estate development gone awry. *Cf. Irwin Concrete, Inc. v. Sun Coast Properties, Inc.,* 33 Wn. App. 190, 653 P.2d 1331 (1982).

On December 15, 1978, Savings Investment Service Corporation (SISCorp) issued a commitment letter for a permanent mortgage loan of $4.5 million dollars to Silverdale Hotel Association (Silverdale) for a new hotel. On January 27, 1979, National Homes Acceptance Corporation (National) agreed to loan Silverdale $4,275,000 for construction. After obtaining the permanent and construction loans, Silverdale contracted with Wick Construction Co. to build the hotel. In May 1979, National made the first loan disbursement to Silverdale, and Wick began construction.

National merged into Lomas & Nettleton Co. (L & N) on July 6, 1979.[1] On July 23 Silverdale submitted its second draw request to L & N to pay for work completed by Wick. L & N refused to fund the draw until Silverdale supplied L & N with final plans and cost estimates for the hotel. Wick

---

[1] At oral argument, counsel for L & N acknowledged that L & N succeeded to all of National's rights and responsibilities under the construction loan agreement with Silverdale.

then suspended work on the project. On August 16 Silverdale submitted its third draw request for work completed by Wick. L & N responded by demanding that Silverdale deposit $1,200,000 for L & N within 5 days or be in default of the construction loan agreement. Silverdale refused to pay the deposit, and could not obtain other financing. Silverdale sued L & N for breach of the construction loan agreement and Wick intervened as a plaintiff. The trial court held L & N liable to Silverdale and Wick. L & N appeals. Silverdale cross–appeals the damages award and the trial court's refusal to award it attorney's fees.

Primarily at issue is whether the trial court's findings of fact support its conclusion that L & N breached the construction loan agreement with Silverdale. Other significant issues are whether the trial court erred (1) in concluding L & N is liable to Wick; (2) in concluding Wick is entitled to lost profits and prejudgment interest; and (3) in failing to award Silverdale certain expenses and attorney's fees. Other satellite issues are also raised. We reverse the trial court's award of lost profits to Wick and its failure to award attorney's fees to Silverdale. Otherwise, we affirm.

### SILVERDALE/CONSTRUCTION LOAN AGREEMENT

▋ L & N contends the trial court erred in concluding it breached the construction loan agreement with Silverdale. Although a substantial part of its brief was devoted to arguing the facts, L & N has not properly assigned error to any of the findings of fact. *See United Nursing Homes, Inc. v. McNutt,* 35 Wn. App. 632, 669 P.2d 476 (1983).[2] There-

---

[2] L & N did not comply with RAP 10.3(g) or RAP 10.4(c). RAP 10.4(c) provides:

> If a party presents an issue which requires study of a statute, rule, regulation, jury instruction, finding of fact, exhibit, or the like, the party should type the material portions of the text out verbatim or include them by facsimile copy in the text or in an appendix to the brief.

The word "should" in the above rule is a word of command, not merely a suggestion. RAP 1.2(b). Where appellant has violated RAP 10.3(g) and 10.4(c) the trial court's findings of fact become the established facts of the case. *In re Santore,* 28 Wn. App. 319, 623 P.2d 702 (1981). *See also Thomas v. French,* 99 Wn.2d 95, 659 P.2d 1097 (1983).

fore, they are verities on appeal. *Yakima Cement Prods. Co. v. Great Am. Ins. Co.*, 93 Wn.2d 210, 608 P.2d 254 (1980). Consequently, our review is limited to determining whether the findings of fact support the trial court's conclusions of law and judgment. *In re Santore*, 28 Wn. App. 319, 623 P.2d 702 (1981). A summary of the findings follows.

On January 27, 1979, National and SISCorp agreed with Silverdale that the "fast–track" method of construction would be used for the hotel project. By "fast–track," they meant that successive partial building permits would be obtained, first for site development, then for foundation work and, finally, for the actual structure. Construction would commence before the final building permit was obtained and while final plans and specifications were still being prepared. National and Silverdale never had a fully integrated writing containing all the terms and conditions of their construction loan agreement. National agreed orally with Silverdale that it would advance loan funds up to $500,000 to pay for work Wick performed before completion and approval of the final plans and specifications. At the time the loan was closed, the parties agreed that Silverdale would give National the detailed estimated cost breakdown after the final plans had been completed and Silverdale had obtained the final building permit. Both Silverdale and National expected the cost information would be provided in September when Silverdale submitted Wick's draw request for work done in August.

On July 24, L & N received Silverdale's second draw request. Part of that request was for money owed to Wick. L & N refused to pay the draw request until Silverdale provided L & N with final plans and specifications and a final cost breakdown. On August 13, L & N informed Silverdale that no draw requests would be funded until Silverdale provided L & N with final plans and cost estimates. L & N then knew that final plans and specifications had not been completed under the fast–track method of construction. Accordingly, L & N's demands of August 13 were

unreasonable. On August 16, Silverdale submitted to L & N its third draw request for work performed by Wick. Both the second and third draw requests accurately represented the amount owed on Wick's work. L & N responded by demanding Silverdale deposit $1,200,000 in cash in Dallas, Texas, or be in default of the construction loan agreement. L & N's actions throughout its handling of Silverdale's construction loan were unreasonable and evidenced an unwillingness to act in good faith or to assist Silverdale in reasonable efforts to complete the hotel project success-fully. As a result of L & N's refusal to fund Wick's interim draw requests, Silverdale was unable to pay Wick the sums due under the construction contract.

In short, the findings establish that (1) L & N promised Silverdale it would fund Wick's draw requests up to $500,000 while final plans were being established; (2) the agreement did not require Silverdale to submit final plans to L & N until the middle of September; (3) L & N refused to fund Wick's draw requests for work completed before August until Silverdale submitted final plans, a final cost breakdown, and a $1,200,000 deposit; and (4) L & N's fail-ure to fund the interim draw requests caused Silverdale to be unable to pay Wick. The findings of fact support the trial court's conclusion that L & N breached its construc-tion loan agreement with Silverdale.

L & N contends the trial court erred in giving effect to the oral portions of the construction loan agreement because they conflict with the following sections of the written agreement:

9.01 All such advances or parts of advances will be made subject to the following conditions as to each advance, each of which Owner covenants to fulfill: . . . (g) That the Owner furnish to NHAC [National] evi-dence satisfactory to NHAC [National] that the undis-bursed proceeds of this loan will be sufficient to pay the cost of completing construction.

10.01 . . . and NHAC [National] shall not be required to make any disbursement hereunder if the undisbursed proceeds of the loan shall be less than the amount neces-

sary to pay for the completion of construction of all improvements contemplated hereby. If for any reason the undisbursed loan proceeds shall at any time be insufficient for such purpose, Owner will within five (5) days after written request by NHAC [National] deposit the deficiency with NHAC [National] and such deposit shall be first disbursed in the manner provided in Exhibit C hereof before any further disbursements of this loan shall be made. . . .

We disagree.

■ Whether or not the parties' entire agreement has been incorporated in the writing is a question of fact. *Barber v. Rochester*, 52 Wn.2d 691, 328 P.2d 711 (1958). Where a written contract is not a complete integration of the parties' intent, the court may consider evidence of oral agreements to supply the missing terms of the contract, insofar as they are not inconsistent with the written terms. *Cromwell v. Gruber*, 7 Wn. App. 363, 499 P.2d 1285 (1972). The trial court found that the writing was not a complete integration of the construction loan agreement. Detailed cost estimates for the hotel were not part of the agreement,[3] and there were other omissions. The court supplied the missing terms by considering the oral agreement to use the fast–track method of construction. The court found the terms were not part of the writing because, at the loan closing, Silverdale and National agreed orally that final plans and detailed cost estimates would be sent to National in mid–September when a final building permit was obtained. Paragraphs 9.01 and 10.01 are not inconsistent with the oral agreement. They were intended to apply to construction advances requested after the final plans were submitted. Until final plans were completed, Silverdale could not provide evidence to National that the undisbursed proceeds of the loan would be sufficient to pay the cost of completing construction. The trial court did not err

---

[3]Paragraph 7.01 of the loan agreement referred to the cost estimates as exhibit B, supposedly attached to the agreement. No such exhibit was ever attached.

in enforcing the oral agreements.

L & N contends the evidence at trial showed Silverdale sent unsuitable plans to L & N in July, representing them to be "final plans." L & N claims this breached the loan agreement, and we may and should consider the evidence that L & N contends supports this proposition because there is no finding negating it. We disagree for two reasons.

First, if there is no express finding upon a material fact, the fact is deemed to have been found against the party having the burden of proof. *Seattle Flight Serv., Inc. v. Auburn,* 24 Wn. App. 749, 604 P.2d 975 (1979). Because L & N alleged Silverdale breached the loan agreement by providing final plans which exceeded the agreed budget, L & N had the burden of proof. The trial court's failure to find that Silverdale sent final plans to L & N is a finding against L & N.[4] Second, the evidence L & N would have us consider directly conflicts with the trial court's express finding, that L & N knew in mid–August that Silverdale had not completed the final plans and specifications.

Finally, L & N contends the trial court erred in finding it liable to Silverdale because Silverdale did not perform a condition precedent to L & N's duty to pay Wick. Finding of fact 57 states:

> SHA [Silverdale] failed to prove by the preponderance of the evidence that the hotel project could have been completed within the monetary limitations of the construction loan, and in such a form as would have been satisfactory to the permanent mortgage lender, SISCorp, within the parameters of SISCorp's permanent loan commitment.

Because Silverdale failed to prove it could build the hotel within the monetary limitations of the construction loan, L & N claims its duty to pay Wick never matured. We disagree.

---

[4]L & N purported to assign error to the trial court's refusal to make this finding, and several other findings. However, here again L & N did not comply with RAP 10.4(c). Therefore, we will not review the alleged error. *Thomas v. French, supra.*

It is true that proof of performance of an express condition precedent is a burden which must be met by the party who seeks enforcement of the contract. *Ross v. Harding,* 64 Wn.2d 231, 391 P.2d 526 (1964). However, proof that Silverdale could build the hotel for $3,600,000 was not a condition precedent to L & N's duty to pay Wick. Conditions precedent are those facts and events, occurring after the making of a valid contract, that must exist or occur before there is a right to immediate performance, before there is a breach of contract duty. *Ross v. Harding,* 64 Wn.2d at 236. Here, Silverdale was not responsible for producing final plans to build the hotel for $3,600,000 until after L & N paid for Wick's initial work. Finding of fact 16 states:

> NHAC [National] agreed with SHA that loan funds would be advanced to fund Wick Construction's initial construction draws for work performed prior to the date of completion and approval of the final plans and specifications, up to a maximum amount of $500,000; . . .

L & N's refusal to pay Silverdale's draw requests for Wick's work was a material breach of the construction loan agreement, which excused further performance by Silverdale. *See Jacks v. Blazer,* 39 Wn.2d 277, 235 P.2d 187 (1951); *Parsons Supply, Inc. v. Smith,* 22 Wn. App. 520, 591 P.2d 821 (1979).

## WICK/CONSTRUCTION LOAN AGREEMENT

The trial court found that National agreed orally with Silverdale that loan funds would be advanced to fund Wick's initial construction draws. National's disbursements on those draw requests would be paid to Wick through an escrow account, and not to Silverdale. From this the court concluded that Wick was a third party creditor–beneficiary of the loan agreement between Silverdale and National. L & N contends these findings do not support the conclusion because the oral agreements conflict with paragraph 12.01 of the written instrument.[5] *Cf. Cromwell v. Gruber, supra.*

---

[5]The parol evidence rule is not an exclusionary device but a rule of substantive law. *Becker v. Lagerquist Bros., Inc.,* 55 Wn.2d 425, 348 P.2d 423 (1960). As a

We agree.

█ Paragraph 12.01 provides in part:

NHAC [National] shall not be liable to any materialman, contractor, subcontractor, laborer or others for goods or services furnished or delivered by them in or upon the property or employed in any such constructions or installations.

National's oral agreement with Silverdale to pay for Wick's work is inconsistent with paragraph 12.01. The trial court erred in concluding that Wick was a third party beneficiary of the loan agreement between Silverdale and National. *See Cromwell v. Gruber, supra.*

### WICK/PROMISSORY ESTOPPEL—LOST PROFITS— PREJUDGMENT INTEREST

L & N contends the trial court erred in concluding it is liable to Wick based on promissory estoppel. We disagree.

█ Five requisites must be met to recover under the theory of promissory estoppel: (1) a promise which (2) the promisor should reasonably expect to cause the promisee to change his position and (3) which does cause the promisee to change his position, (4) justifiably relying upon the promise, in such a manner that (5) injustice can be avoided only by enforcement of the promise. *Lectus, Inc. v. Rainier Nat'l Bank,* 97 Wn.2d 584, 647 P.2d 1001 (1982). The trial court found that National advised Wick in May that Silverdale was not in default under the loan agreement, and that National would pay Wick according to the terms of that agreement. One of the terms was National's promise to advance loan funds up to $500,000 for work Wick performed before the final plans and specifications were completed. Wick thereupon acceded to National's request that National be named as a dual obligee on Wick's payment and performance bonds. The court also found Wick began construction in reliance on National's promise to pay. The

---

matter of substantive law evidence of oral agreements may not alter obligations under the written instrument. *Fleetham v. Schneekloth,* 52 Wn.2d 176, 324 P.2d 429 (1958).

findings support the conclusion that L & N is liable to Wick based on promissory estoppel.

L & N claims the trial court erred in awarding Wick lost profits. We agree.[6] The trial court merely found that National promised

> to fund Wick Construction's initial construction draws for work performed prior to the date of completion and approval of the final plans and specifications, up to a maximum amount of $500,000; . . .

This amount came to $323,025.36, including sales tax and interest incurred to pay the construction costs and tax. National made no promise to pay Wick a profit. Therefore, the trial court erred in awarding Wick lost profits.

■ L & N also contends the trial court erred in awarding prejudgment interest to Wick. We disagree. Prejudgment interest is allowable when the claim is liquidated. A liquidated claim is one where evidence furnishes data which makes it possible to compute the amount with exactness, without reliance on opinion or discretion. *Sime Constr. Co., Inc. v. Washington Pub. Power Supply Sys.*, 28 Wn. App. 10, 621 P.2d 1299 (1980). The fact that a claim is disputed does not prevent it from being liquidated. *Seattle v. Dyad Constr., Inc.*, 17 Wn. App. 501, 565 P.2d 423 (1977). Wick's claim was liquidated. The trial court found Wick's construction costs were determinable under the construction contract and were undisputed.

### SILVERDALE EXPENSES

The trial court awarded Silverdale judgment against L & N for the amount it owed Wick, and for the amount of a partial loan fee to National. The court concluded that all other claimed costs, expenses and possible liabilities of Silverdale were not recoverable damages. The court based this conclusion on its finding that Silverdale did not prove the other expenses were covered by the loan, were consequen-

---

[6]The trial court calculated lost profits based on Wick's contract with Silverdale. L & N claims this was error because the Silverdale–Wick contract contained illusory promises and was therefore unenforceable. We do not reach this issue.

tial damages resulting from L & N's breach, or were liabilities of Silverdale. Silverdale did not assign error to this finding,[7] but contends the court erred as a matter of law, citing *Coastland Corp. v. Third Nat'l Mortgage Co.,* 611 F.2d 969 (4th Cir. 1979). We disagree. *Coastland* merely states the accepted principle that a party may recover damages for the natural consequences of the breach that were within the contemplation of both parties. *Coastland* did not hold that a promisor who breaches a promise to loan money is liable to the promisee for expenses that were not intended to be covered by the loan, were not consequential damages resulting from the promisor's breach, or were not liabilities of the promisee. Silverdale's position on this issue is contrary to well established contract law.[8] *See, e.g., Kennedy v. Meilicke Calculator Co.,* 90 Wash. 238, 155 P. 1043 (1916); *Revett v. Globe Nav. Co.,* 68 Wash. 300, 123 P. 459 (1912); 5 A. Corbin, *Contracts* §§ 1011, 1034 (1964).

## ATTORNEY'S FEES

Where a contract specifically provides that attorney's fees incurred to enforce the contract shall be awarded to one of the parties, the prevailing party shall be entitled to reasonable attorney's fees. RCW 4.84.330. "Prevailing party" means the party in whose favor final judgment is rendered. RCW 4.84.330. Where a party prevails for the

---

[7]The court's finding was contained in conclusion of law 16, the relevant portion of which provided: "All other claimed costs, expenses and possible liabilities of SHA [Silverdale] in connection with the Silverdale Hotel Project are not recoverable damages because of SHA's [Silverdale's] failure to prove that such were to be paid from the construction loan payments, its failure to prove that SHA [Silverdale] is in fact liable therefor or its failure to prove that such were consequential damages resulting from L & N's breach." A finding of fact erroneously labeled a conclusion of law will be treated as a finding. *Ferree v. Doric Co.,* 62 Wn.2d 561, 383 P.2d 900 (1963). Counsel for Silverdale conceded at oral argument that the trial court found Silverdale failed in its proof.

[8]In its brief, Silverdale argued this court should compel L & N to indemnify Silverdale for the above expenses as an alternative to awarding damages. Because Silverdale is not entitled to judgment for the additional claimed expenses, it is not entitled to indemnity either. *See Nelson v. Sponberg,* 51 Wn.2d 371, 318 P.2d 951 (1957).

purpose of recovering costs, it must also be considered the prevailing party for the purpose of recovering attorney's fees. *Stott v. Cervantes,* 23 Wn. App. 346, 595 P.2d 563 (1979). The contract between Silverdale and National contained an attorney's fee provision. The court rendered final judgment to the benefit of Silverdale for over $600,000, including costs. Therefore, Silverdale was the prevailing party and the trial court erred in denying its request for attorney's fees.

L & N contends neither party prevailed, citing *Rowe v. Floyd,* 29 Wn. App. 532, 629 P.2d 925 (1981). *Rowe* is distinguishable because there both parties received relief. The plaintiff recovered damages, and defendant prevailed on his forfeiture claim. Unlike *Rowe,* L & N did not prevail on the contract dispute, except in the sense that damages were not as high as prayed for. A party need not recover its entire claim in order to be considered the prevailing party. *See Stott v. Cervantes, supra.*

Because Silverdale has also substantially prevailed on appeal and has complied with RAP 18.1, it is entitled to attorney's fees here. Therefore, we award Silverdale attorney's fees for the appeal in the amount of $23,278.

We reverse the trial court's award of lost profits to Wick and its denial of attorney's fees to Silverdale. The case is remanded to the trial court with instructions to award Silverdale its reasonable attorney's fees for the Superior Court proceedings. In all other respects, the judgment is affirmed.

PETRICH, C.J., and PETRIE, J., concur.

Reconsideration denied March 28, 1984.

Review denied by Supreme Court June 8, 1984.