IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| AL and PAULETTE JANSEN, | No. 83994-2-I |
| Appellants, | |
| v. | DIVISION ONE |
| PEOPLE'S BANK, a Washington Bank Corporation; and CRAIG CAMMOCK, an individual, | UNPUBLISHED OPINION |
| Respondents. | |

SMITH, C.J. — Al and Paulette Jansen obtained financing from Peoples Bank to build a home. As a condition of the loan agreement, the Jansens needed to obtain the Bank's approval before making any material or substantial changes to the construction plans, such as changing contractors. After the Jansens terminated their contractor without notice to the Bank, the Bank sent the Jansens a letter declaring them to be in default. In response, the Jansens sued the Bank, alleging breach of contract, breach of the duty of good faith and fair dealing, and violations of the Consumer Protection Act, chapter 19.86 RCW. They also sued the Bank's lawyer for tortious interference with the contract. The trial court dismissed all the Jansens' claims in consecutive summary judgment motions. The Jansens appeal, asserting that the trial court erred in concluding that the Bank did not breach the contract and that no issues of material fact existed. We disagree and affirm.

FACTS

In October 2019, Al and Paulette Jansen obtained a $935,000 loan from Peoples Bank to build a home in Bow, Washington. The parties executed a Construction Loan Agreement and an Adjustable Rate Note. The latter contained an addendum allowing the Jansens the option of converting their construction loan into a permanent loan. Several provisions of the loan agreement are relevant to this appeal.

Section 3 is entitled "The Work" and provides general guidelines for the construction. It provides that any changes to the work must be in a written agreement, signed by the Jansens and their contractor, and approved by the Bank.

Section 4 concerns the loan and addresses disbursements, use of funds, and the construction loan account. It makes clear that the Bank has no obligation to disburse any loan proceeds during any period of default. It also provides that the Bank may disburse funds in a matter and at a rate that the Bank deems consistent with construction progress. Lastly, section 4 provides that the borrower, in conjunction with the contractor, is responsible for providing invoices and lien waivers to the Bank—the Bank has no affirmative duty to verify any of that information.

Section 6 covers events of default and the Bank's available remedies. It defines what constitutes a default and authorizes the Bank to declare a default and to cancel permanent financing in the case of a default.

Issues began shortly after construction started. The Jansens, unhappy with the work being done by their contractor, asked their son Grant, himself a construction professional, to investigate the contractor's performance. Grant reported to his parents that the Bank "had administered payments to the contractor in numerous improper ways" and that both the Bank and contractor had breached their agreements with the Jansens.

In March 2020, the Jansens parted ways with their contractor and hired Grant to finish the construction. In early April, Grant sent an e-mail to the Bank explaining the new arrangement. Grant told the Bank: "As you know the contract with [the contractor] is terminated. We are completing the project ourselves personally so there is no new contract to give you." Grant also told the Bank that it was no longer authorized to make further payments to the contractor and that the Jansens would "reconcile any final payment to or refund from [the contractor] on [their] own."

A few days later, the Bank sent the Jansens a letter acknowledging receipt of Grant's e-mail and alerting them that termination of the contractor constituted default because it was "a substantial and material change to conditions of the loan." The Bank advised the Jansens to "promptly and adequately address this substantial change of circumstance in compliance with the provisions of the Loan Documents" and execute a termination document. The Jansens did not do so.

Instead, in June 2020, the Jansens sued the Bank and its lawyer, Craig Cammock. Against the Bank, the Jansens alleged breach of contract, breach of the duty of good faith and fair dealing, and a Consumer Protection Act violation.

3

Against Cammock, the Jansens alleged tortious interference with a contract. The Bank promptly moved to dismiss under CR 12(b)(6), but the court denied its motion. However, the court noted that it had "significant question as to some of the breaches alleged in the Complaint, particularly those subsequent to the termination of the contractor" and "invite[d] these issues to be brought back before the [sic] it on a motion for summary judgement [sic]." Cammock then individually moved for summary judgment on the tortious interference claim and the court granted his motion and dismissed the claim.

Once the parties completed initial discovery, the Bank moved for summary judgment on all remaining claims. The court granted the Bank's motion. The Jansens appealed.

Shortly after the Jansens filed their notice of appeal, the Bank petitioned the trial court for attorney fees and costs and Cammock moved for sanctions under CR 11. Following oral argument, the court denied Cammock's motion for sanctions, but granted the Bank's petition for fees and awarded it $92,142.50.

ANALYSIS

We are presented with three issues on appeal. First, whether the court erred in granting summary judgment for the Bank on the Jansens' seven breach of contract claims. We conclude that it did not. On each of the seven breach claims, the Jansens fail to demonstrate either the existence or breach of a contractual duty. Second, whether the court erred in granting summary judgment for the Bank on the Jansens' breach of duty of good faith and fair dealing claim. Because the duty of good faith and fair dealing must be connected to a valid

4

breach of contract claim—which the Jansens do not have—we affirm this dismissal. Third, whether the court erred in granting summary judgment for the Bank on the Jansens' Consumer Protection Act (CPA) claim. We affirm the court's dismissal of the CPA claim because the Jansens do not identify any unfair or deceptive practice by the Bank.

Finally, both parties request fees on appeal. Because the Jansens do not provide a legal basis for fees, we deny their request. And because the Bank does provide a legal and contractual basis for fees, we award them fees.

## Standard of Review

We review de novo an order granting summary judgment and engage in the same inquiry as the trial court. Assoc. General Contractors of Wash. v. State, 200 Wn.2d 396, 403, 518 P.3d 639 (2022). "Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." Lakehaven Water & Sewer Dist. v. City of Federal Way, 195 Wn.2d 742, 752, 466 P.3d 213 (2020) (citing CR 56(c)). We consider the evidence and reasonable inferences from it in the light most favorable to the nonmoving party. Kim v. Lakeside Adult Family Home, 185 Wn.2d 532, 547, 374 P.3d 121 (2016). If reasonable minds could differ on facts controlling the outcome of the litigation, then there is a genuine issue of material fact and summary judgment is inappropriate. Ranger Ins. Co. v. Pierce County, 164 Wn.2d 545, 552, 192 P.3d 886 (2008).

Breach of Contract Claims

The Jansens assert that the Bank breached the contract in seven different ways. The Bank counters that it was contractually permitted to take the actions it did. We agree with the Bank.

To prevail on a breach of contract claim, a plaintiff must prove that a valid contract exists between the parties, that the contract imposes a duty, that the defendant breached that duty, and that the breach proximately caused damage to the plaintiff. P.E.L. v. Premera Blue Cross, 24 Wn. App. 487, 496, 520 P.3d 486 (2022). Whether a party had a contractual duty to take an action at a particular time is a question of law. Badgett v. Sec. State Bank, 116 Wn.2d 563, 568, 807 P.2d 356 (1991). Whether a party breached a contractual duty is a question of fact. Frank Coluccio Constr. Co. v. King County, 136 Wn. App. 751, 762, 150 P.3d 1147 (2007).

When interpreting a contract, "we attempt to determine the parties' intent by focusing on the objective manifestations of the agreement, rather than on the unexpressed subjective intent of the parties." Hearst Comm'ns, Inc. v. Seattle Times Co., 154 Wn.2d 493, 503, 115 P.3d 262 (2005). Words in a contract are given their ordinary, usual, and popular meaning unless a contrary intent is shown. Condon v. Condon, 177 Wn.2d 150, 163, 298 P.3d 86 (2013). "Courts will not revise a clear and unambiguous agreement or contract for parties or impose obligations that the parties did not assume for themselves." Condon, 177 Wn.2d at 163.

6

1.  <u>Breach 1: Section 4(f)(iv)</u>

The Jansens first assert that "[t]he Bank had a duty to verify that invoices were properly submitted for work performed before issuing disbursements" and that they "were entitled to rely on [section 4(f)(iv)] to ensure that the Bank was verifying that work was actually being performed prior to disbursement of the loan proceeds."  The Jansens also contend that section 7(m) is ambiguous and may give rise to a broader duty of the Bank to review draw requests.  And as yet another alternative argument, the Jansens contend that the Bank failed to provide the requisite notice before waiving its obligations under this section.  But neither section 4(f)(iv) nor section 7(m) creates any such duty or obligation on the part of the Bank.

Section 4(f)(iv) provides, in relevant part:

Contractor will deliver to Lender (i) a Request for Draw/Advance, properly completed, and acknowledged by you and Contractor, (ii) the invoices for the Work . . . and (iv) all other required information described in the Request for Draw/Advance.  Lender may rely on your statements and Contractor's statements in the Request for Draw/Advance and on the invoices and lien waivers submitted by Contractor.  Lender has no obligation to verify any of that information.

Section 4(f)(iv) specifically states that the Bank "may rely on . . . the invoices and lien waivers submitted by Contractor" but that the Bank "has *no obligation to verify* any of that information" before disbursing funds.  (Emphasis added.)  The Jansens' argument that this section creates a duty on the part of the bank is undermined by the plain language of the contract.  Nothing in section 4(f) affirmatively requires the Bank to refuse to make advances if the

conditions were not satisfied. Rather, a plain reading of the section indicates that the *contractor* has a duty to provide invoices to the Bank.

The Jansens disagree, pointing to another section of the contract, section 7(m), entitled "No Third Party Beneficiary," which states:

> The Loan Agreement is for the sole benefit of Lender and you, and is not for the benefit of anyone else. All conditions to Lender's obligation to make any Advance [sic] are solely for Lender's benefit. No other person or entity will have standing to require satisfaction of those conditions or be deemed to be the beneficiary of those conditions.

The Jansens assert that section 7(m) is ambiguous and should be construed against the Bank. They claim that the contract's conditions should not benefit only the Bank. But they do not elaborate on how section 7(m) creates a duty enforceable against the Bank. Section 7(m) by plain, unambiguous language merely disclaims the contracts creation of rights in a third-party beneficiary. Their argument is unavailing; with or without consideration of section 7(m), the plain language of the contract does not create a duty for the Bank to verify invoices under the contract.

Finally, without an underlying duty, there is no obligation for the Bank to waive. We therefore need not address the Jansens' argument that the Bank failed to properly give notice that it was waiving an obligation to independently verify draw/advance request information. This claim for breach fails as a result.

2. Breach 2: Section 3(c)

The Jansens argue that the Bank violated section 3(c) when it issued payments to the contractor even though the contractor's work deviated from the

plans and despite no written change orders being submitted as required by section 3(c). Because the Bank had no independent obligation to ensure the contractor was abiding by the plans, we reject this argument.

Section 3(c) requires any change orders to be in writing. It states: "Any change in the Contract Price, the Work or the Work and Payment Schedule must be in a written agreement, signed by you and the Contractor, and approved by Lender." The Jansens point to this language in an attempt to create an obligation on the part of the Bank to independently verify that the work was proceeding as planned.

But as another subpart of the same section, 3(h), makes clear the Bank had no such obligation. It provides: "You understand and agree that you have full and sole responsibility to make sure that the Work is fully completed and complies with the Plans and Specifications." Section 3(h) also provides that "[n]othing Lender does (including inspecting the Work or making an advance) will be a representation or warranty by Lender that the Work complies with . . . this Loan Agreement." Section 3 therefore placed the onus entirely on the Jansens to ensure change orders were properly submitted and to certify that all work complied with the plans.

Because the Bank did not have a duty to ensure the contractor performed in accordance with the plans, this breach of contract claim fails.

3. Breach 3: Section 4(e)

The Jansens contend that the Bank "made disbursements for unfinished or defective work that were not based on progress" as required by section 4(e). We disagree.

Section 4(e) gives the Bank wide latitude over when and how to make disbursements. It provides that "Lender may disburse funds from the Construction Loan Account in such manner and at such rate of completion as Lender in its sole discretion deems consistent with construction progress" and that "[a]ll disbursements made by Lender for the Work will be based on progress only."

The Jansens focus their argument on the requirement that disbursements be based on progress. But doing so ignores the first half of the section: the Bank—not the Jansens—determines what constitutes construction progress. In signing the loan agreement, the Jansens agreed to accept the Bank's determination of progress. The contract language is clear and the Jansens cannot now argue for new terms. This breach of contract claim fails.

4. Breach 4: Adjustable Rate Note

The Jansens contend that the Bank breached the terms of the Adjustable Rate Note by refusing to convert the loan into a permanent loan. We disagree. The undisputed facts demonstrate that the Jansens failed to fulfil their contractual

obligations, constituting a default, and as a result, the Bank was no longer required to convert the loan.

Absent a default, the Bank does indeed have a contractual duty to convert the loan into a permanent loan.[1]  However, in the event that the Jansens defaulted, section 6 allows the Bank to "declare the Loan Agreement, the Note, the Security Instrument, or all of them, in default and exercise any remedies provided under any of them."  The Bank may also, "without liability, cancel any commitment for permanent financing relating to the Property."  Failure to fulfill any obligation in the loan agreement constitutes an event of default.

The relevant contractual obligations the Jansens breached are located in sections 1(e), 3(a), 4(c), and 7(c).  Section 1(e) defines the contractor as "the person or entity that will perform the Work" and specifies that "the name of the Contractor is set forth on the COVER PAGE to [the] Loan Agreement."  Moceri Construction, Inc. is listed as the contractor on the cover page.  Section 3(a) requires the Jansens "have no other agreements for the Work" other than the originally agreed upon contractor.  Section 4(c) instructs that "[u]nless Lender agrees in writing first, you [the Jansens] may not change the Plans or Construction Contract."  Section 7(c), entitled "Cooperation," requires the Jansens to, "at [their] own cost and expense, sign any other instruments or documents, and supply any information and data that Lender considers necessary to accomplish the purposes of [the] Loan Agreement."  Section 7(c)

---

[1] This requirement is included in the Construction Addendum, which is not before this court.  However, neither party disputes that the loan was to be converted.

also requires the Jansens to "willingly execute an appropriate modification to [the] Loan Agreement" "[i]f, in Lender's opinion, a material modification of the terms of th[e] Loan Agreement is required, or occurs."

Here, contrary to the Jansens' contentions, the underlying facts are undisputed and the trial court properly decided on summary judgment that the Jansens had defaulted. The Jansens do not dispute that they parted ways with their original contractor and did so without the Bank's approval. This was a violation of their agreement to not make any changes to the plans or construction contract without first obtaining the Bank's approval. They also do not dispute that on April 6, 2020, Grant sent the Bank an e-mail informing its representatives: "We are completing the project ourselves personally so there is no new contract to give you." This was a violation of their agreement to "have no other agreements for the Work" and their agreement to "sign any other instruments or documents . . . that Lender consider[ed] necessary to accomplish" construction. Though the Jansens claim they "provided the Bank with all requested documents, including a new budget, schedule, and insurance," this assertion is unsupported by the record and does not create an issue of material fact.[2]

---

[2] To support this claim, the Jansens cite generally to their opposition to Cammock's motion for summary judgment. But in that opposition, they do not argue that they provided all necessary documents. Instead, they wholly rely on a letter from Grant to the Bank in which they say proves they "were not in default because [they] made all payments, plan[ned] to finish the work on time, [had] not failed to comply with any agreement under the loan agreement and made no false statements." The letter itself makes no mention of documents provided to the Bank.

Because the undisputed facts demonstrate the Jansens defaulted, the Bank was allowed to "exercise any remedies" and "without liability, cancel any commitment for permanent financing relating to the Property." This claim for breach fails.[3]

5. Breach 5: Change of Loan Terms

The Jansens assert that the Bank attempted to coerce them into signing a Change in Terms Agreement by overcharging interest until they signed the new agreement. The Bank does not address this argument in its response. However, because the Jansens do not provide adequate support from the record, we conclude that this breach claim fails as well.

To defeat summary judgment, the nonmoving party must set forth specific facts demonstrating a genuine issue of material fact. Newton Ins. Agency & Brokerage, Inc. v. Caledonian Ins. Grp., Inc., 114 Wn. App. 151, 157, 52 P.3d 30 (2002). "Mere allegations or conclusory statements of fact unsupported by evidence are not sufficient to establish a genuine issue of material fact." Egan v. City of Seattle, 14 Wn. App. 2d 594, 608, 471 P.3d 899 (2020). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to [their] case," then summary judgment is warranted. Atherton Condo. Apartment-Owners Ass'n Bd. of Dirs. v. Blume Dev. Co., 115 Wn.2d 506, 516, 799 P.2d 250 (1990).

---

[3] We note, too, that the Bank did eventually convert the loan into a permanent loan, despite the Jansens' default.

Questions of fact may be determined as a matter of law at summary judgment " 'when reasonable minds could reach but one conclusion.' " Owen v. Burlington N. & Santa Fe R.R. Co., 153 Wn.2d 780, 788, 108 P.3d 1220 (2005) (quoting Hartley v. State, 103 Wn.2d 768, 775, 698 P.2d 77 (1985)).

The Jansens argue that the Bank started assessing interest as if $935,000 had been advanced when in fact only $629,000 had been paid out. Albeit a bit unclear, they seem to argue that they were only responsible for any funds disbursed before the Bank's alleged breaches terminated their contractual obligations—i.e., $629,000. They further claim that Grant discovered this overcharge and asked that it be corrected, but that the Bank refused. They also maintain that in their next loan statement, the Bank "silently changed the allocation of payments in an apparent attempt to cover up this mistake, by reducing the January interest charges and increasing the Jansens' payment on the principal." But none of these assertions is accompanied by supporting record citations. And the Jansens fail to produce any documentation that the Bank agreed to only charge interest on the amount of the loan that had been paid up to that point or identify which contract term the Bank breached through this alleged action.

The Jansens advanced the same argument before the trial court, also without supporting documentation. At summary judgment, they claimed the Bank had demanded "$3,116.67 in interest charges for the month of January 2021— even though it had only advanced approximately $629,000 (and therefore less than $3,000 in interest had actually accrued)." But the Jansens did not provide

14

the January statement or any of their correspondence with the bank; rather, they relied solely on a declaration from Al Jansen in which he recited the same facts. The allegations contained in Al's declaration are insufficient to create an issue of material fact because they lack sufficient detail regarding how the Jansens were overcharged. Al claims the Bank's calculations were wrong, but he does not dispute that he agreed to the loan terms or explain why the calculations were wrong. Moreover, he does not allege that the Bank agreed to alter the terms of the loan or provide any documentation supporting such an assertion. Even when viewing the evidence in the light most favorable to the Jansens, Al's declaration falls short of creating an issue of material fact. The declaration and the Jansens' briefing are insufficient to show that a duty existed or was breached. This breach claim fails.

6. <u>Breach 6: Section 4(b)</u>

The Jansens allege that the Bank failed the essential purpose of the contract by failing to fund the loan agreement after they defaulted. The Bank contends that it did not need to continue funding the loan after the Jansens defaulted. We agree with the Bank.

Section 4(b) provides that "Lender will have no obligation to disburse any Loan Proceeds during any period of time when any default or Event of Default is outstanding under th[e] Agreement or any of the other Loan Documents." The Bank's decision to stop disbursing funds was therefore sanctioned under the contract and no breach occurred.

7. Breach 7: Attorney Fees

Lastly, the Jansens argue that the Bank "wrongfully assessed attorneys' fees against the Jansens, and attempted to use these attorneys' fees to coerce the Jansens into signing a new agreement." The Bank counters that section 6(b) permits it to assess attorney fees incurred in exercising its rights. We agree that section 6(b) permits the Bank to recoup its fees.

Section 6(b)(vi) requires the borrower to "agree to promptly pay to Lender all attorney's fees, costs, and other expenses paid or incurred by Lender in enforcing or exercising Lender's Rights and Remedies under th[e] Loan Agreement."

Though the Jansens claim the Bank's assessment of "unjustified attorneys' fees was in breach of the [loan agreement]," they do not state which provision the Bank allegedly breached and do not argue with specificity why the fees assessed were "unjustified." The Bank had the right to recoup its fees under section 6(b); its actions do not constitute a breach.

Duty of Good Faith and Fair Dealing

The Jansens contend the Bank breached its duty of good faith and fair dealing by failing to "faithfully cooperate to obtain the principal objective of the [loan agreement]." They allege the Bank "purposefully interfered with the purpose of the [loan agreement] . . . in an attempt to protect its lien priority status against Moceri [the original contractor], who had superior lien rights." The Bank maintains that a standalone claim for breach of good faith and fair dealing does

not exist in Washington and that the Jansens' claim fails as a matter of law.  We agree with the Bank and affirm the court's dismissal of this claim.

In every contract, there is "an implied duty of good faith and fair dealing" that "obligates the parties to cooperate with each other so that each may obtain the full benefit of performance."  Badgett, 116 Wn.2d at 569.  But this duty does not impose a "free-floating" obligation of good faith on the parties.  Rekhter v. Dep't of Soc. & Health Servs., 180 Wn.2d 102, 112-13, 323 P.3d 1036 (2014).  Instead, the duty of good faith and fair dealing arises "only in connection with terms agreed to by the parties."  Badgett, 116 Wn.2d at 569.  " 'It requires only that the parties perform in good faith the obligations imposed by their agreement.' "  Pierce v. Bill & Melinda Gates Foundation, 15 Wn. App. 2d 419, 433, 475 P.3d 1011 (2020) (quoting Badgett, 116 Wn.2d at 569).  Therefore, "there cannot be a breach of the duty of good faith when a party simply stands on its rights to require performance of a contract according to its terms."  Badgett, 116 Wn.2d at 570.  Thus, here, where the Bank did not breach the contract, it did not breach its duty of good faith and fair dealing.

The Jansens claim that the present case is analogous to Silverdale Hotel Associates v. Lomas & Nettleton Company.  36 Wn. App. 762, 677 P.2d 773 (1984).  But in Silverdale, the court determined that the lender breached specific terms of the contract as well as the duty of good faith and fair dealing.  36 Wn. App. at 767.  It is therefore not analogous here.  The Bank did not violate its duty of good faith and fair dealing by standing on its rights and requiring the Jansens perform the contract according to its terms.

Consumer Protection Act

The Jansens contend that issues of material fact exist as to whether the Bank violated Washington's Consumer Protection Act. We conclude that the Jansens fail to show an unfair or deceptive act under the CPA and affirm the trial court's dismissal of this claim.

Washington's Consumer Protection Act makes "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce" unlawful. RCW 19.86.020. To establish a private claim under the CPA, "a plaintiff must establish five distinct elements: (1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; [and] (5) causation." Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wn.2d 778, 780, 719 P.2d 531 (1986). All five elements must be established for a CPA claim to succeed. Keodalah v. Allstate Ins. Co., 194 Wn.2d 339, 349-50, 449 P.3d 1040 (2019). The Jansens fail to establish the first: the existence of an unfair or deceptive act.

Whether an act is unfair or deceptive is a question of law. Panag v. Farmers Ins. Co. of Wash., 166 Wn.2d 27, 47, 204 P.3d 885 (2009). This element can be established in one of three ways: "(i) per se unfair or deceptive conduct, (ii) an act that has the capacity to deceive a substantial portion of the public, or (iii) an unfair or deceptive act or practice not regulated by statute but in violation of the public interest." State v. Mandatory Poster Agency, Inc., 199 Wn. App. 506, 518, 398 P.3d 1271 (2017) (footnotes omitted). A plaintiff does not

18

need to show intent to deceive, only that the act " 'had the capacity to deceive a substantial portion of the public.' " State v. Comcast Cable Commc'ns. Mgmt., LLC, 16 Wn. App. 2d 664, 693, 482 P.3d 925 (2021) (quoting Panag, 166 Wn.2d at 47). " '[W]hether a deceptive act has the capacity to deceive a substantial portion of the public is a question of fact.' " Mandatory Poster Agency, 199 Wn. App. at 521 (quoting Behnke v. Ahrens, 172 Wn. App. 281, 292, 294 P.3d 729 (2012)).

Here, the Jansens' conclusory statements are inadequate to establish the Bank acted deceptively. The Jansens allege the Bank's conduct was "manifestly unfair and deceptive" as evidenced by the Bank's failure to "ensure that the fundamental safeguards were followed by the contractor," "disburse the loan funds pursuant to the contract," and "convert the loan to a permanent loan." They also assert that the Bank "misrepresented that the Jansens were in breach of the contract." But aside from these blanket assertions, the Jansens provide no specificity about how they were deceived or how the Bank's actions had the capacity to deceive a substantial portion of the public. And, as discussed above, the actions the Jansens dub deceptive are all permissible under the contract.

In the alternative, the Jansens maintain that the "capacity to deceive a substantial portion of the public" inquiry is a question of fact precluding summary judgment. But for that to hold true, the Jansens needed to have alleged facts sufficient to create a question of fact. They did not. Speculative or conclusory allegations do not create a material issue of fact; the Jansens failed to carry their burden on summary judgment. Elcon Const., Inc. v. E. Wash. Univ., 174 Wn.2d

157, 169, 273 P.3d 965 (2012) ("Conclusory statements and speculation will not preclude a grant of summary judgment."). We affirm the court's dismissal of the CPA claim for failure to meet this first element.

Attorney Fees at Trial Court

Although the Jansens do not assign error to the court's award of fees to the Bank, they contend the award should be reversed. The Jansens maintain that if they prevail on appeal, the Bank's award of fees should be reversed. But because the Bank prevails on appeal, we affirm the fee award.

Attorney Fees on Appeal

Both the Jansens and the Bank request fees on appeal. The Bank requests fees per the terms of the contract and RCW 4.84.330. Under RCW 4.84.330, a unilateral fee provision in a contract is read bilaterally to permit the prevailing party in any contract action to recoup its attorney fees and costs. Thus, as the prevailing party on appeal, the Bank is entitled to fees.

The Jansens claim they are entitled to attorneys' fees and costs pursuant to RCW chapter 39.08, RCW chapter 60.28, and Olympic Steamship Company, Inc. v. Centennial Insurance Company, 117 Wn.2d 37, 811 P.2d 673 (1991). None of these sources of authority supports their claim to fees. RCW 60.28.030 concerns lien foreclosures and provides that in "any action brought to enforce the lien, the claimant, if he or she prevails, is entitled to recover . . . attorney fees in such sum as the court finds reasonable." Because the Jansens do not allege that any kind of lien is involved here, RCW 60.28.030 is inapplicable. RCW 39.08.030 applies to public contracts and allows a party, in

an action on bond, to recover attorney fees. Here, the Jansens are not a public party and cannot recover fees under this chapter. Lastly, in Olympic Steamship, our state Supreme Court held that an "insured who is compelled to assume the burden of legal action to obtain the benefit of its insurance contract is entitled to attorney fees." 117 Wn.2d at 54. The Jansens are not an insured party in the present case and do not cogently explain why Olympic Steamship's fee rule applies to them.

Because the Jansens do not demonstrate entitlement to fees, and because the Bank does, we deny their request.

Affirm.

_Smith, C.J._

WE CONCUR:

_Hazelrigg, A.C.J._          _Mann, J._